**IN RE BEXAR COUNTY CRIMINAL
DISTRICT ATTORNEY'S
OFFICE, Relator.**

No. 05–0613.

Supreme Court of Texas.

Argued Sept. 28, 2006.

Decided May 4, 2007.

Rehearing Denied June 29, 2007.

Susan Dolan Reed, Criminal District Attorney, Clarkson F. Brown, Assistant Criminal District Attorney, Thomas W. Gendry, Claudia Damy Brown, Gendry & Spargue, P.C., San Antonio, for Relator.

Robert W. Wilson, Mark A. Sanchez, Christopher John Gale, Law Offices of Gale, Wilson & Sañchez, P.L.L.C., San Antonio, for Real Party In Interest.

Justice WILLETT delivered the opinion of the Court, in which Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, and Justice BRISTER joined.

This case presents an issue of first impression: whether the work-product privilege protects prosecutors from testifying in a malicious prosecution suit when they have already released the prosecution file. Relator Bexar County Criminal District Attorney's Office ("DA" or "DA's Office") provided its prosecution file to real party in interest David Crudup, who had sued relator Cynthia Blank for malicious prosecution. Crudup subpoenaed DA representatives to testify, but the trial court granted the DA's Motion to Quash and For Protective Order. The court of appeals disagreed and ordered the trial court to withdraw its order.[1] The DA's Office and Blank now seek mandamus relief in this Court, and given the record and circumstances presented, we conditionally grant it.

## I.  Factual and Procedural Background

David Crudup and his wife were feuding neighbors of Cynthia Blank and her teenage son Travis. The Crudups and the Blanks complained repeatedly about each other to the Bexar County Sheriff's Office regarding such incivilities as barking dogs, obscenities yelled, cut cable lines, strewn grass clippings, trash left in a yard, rocks thrown at a fence, water sprayed on cars and grass, and a sprinkler that ran too long and created a puddle. Each time, the responding officer would talk to both sides and prepare an incident report.

On one occasion, Travis Blank alleged that Crudup threatened to kill him. Following this complaint, the DA charged Crudup with making terroristic threats.[2] During their investigation, members of the DA's Office interviewed Blank on several occasions. The DA's prosecution file contains sheriff's department reports, typed internal memos, letters written by Blank, and handwritten notes from interviews and telephone calls prepared by the DA's office. One set of notes detailed a series of calls between Blank and Assistant DA Robert McCabe. The file indicates that Blank refused to testify or to allow Travis to testify at trial, despite McCabe's warnings that the DA's Office would drop the charges against Crudup if they did not testify.

The DA's Office indeed dropped the charges, and Crudup sued the Blanks for malicious prosecution. The DA's Office complied with a subpoena *duces tecum* and turned over its prosecution file to Crudup for use in the civil case. Crudup subpoenaed McCabe, another assistant DA, and a DA investigator to testify at trial. The DA's Office and the three subpoenaed individuals filed a Motion to Quash and For Protective Order, arguing that the work-product privilege precluded the testimony

---

1.  179 S.W.3d 47, 51.

2.  This crime ranges from a Class B misdemeanor to a state jail felony depending upon the circumstances of the threat.  *See* Tex. Penal Code § 22.07.

Crudup sought. Crudup's response attached no evidentiary support other than the previously produced prosecution file. Crudup insisted·the DA testimony was not work product, and in any event the DA had waived any privilege claim by disclosing the prosecution file. The trial court conducted a brief non-evidentiary hearing and granted the DA's motion from the bench. At the hearing, Crudup's counsel complained, without elaboration, that the court had "damaged my case" and "severely limited and handicapped my case." Crudup filed a motion for reconsideration, attaching a transcript of the hearing and arguing that he needed the testimony from the DA personnel "to fully develop" his case and to prove the elements of malicious prosecution. The motion also attached notes from the prosecution file written by McCabe, and purporting to "state the reasons" and "describe the reason" the criminal case was dismissed. The trial court entered a written order again granting the DA's motion and effectively denying the motion for reconsideration.

The court of appeals granted Crudup mandamus relief and directed the trial court to withdraw its order. The court of appeals concluded that under *King v. Graham*[3] Crudup must prove that Blank's provision of false information was the determining factor in the DA's decision to bring the criminal prosecution, and that "[u]nder these circumstances the work-product privilege does not operate as a blanket privilege covering all decisions made by the DA's office."[4] The DA now seeks mandamus relief in this Court.

## II. Discussion

### A. Standard of Review

We grant mandamus relief when the trial court has abused its discretion and a party has no adequate appellate remedy.[5] As to the first prong, a lower court has no discretion in determining what the law is, even when the law is unsettled.[6] As to the second, we have repeatedly held that appeal is inadequate when a court erroneously orders disclosure of privileged information.[7]

### B. The *King* Decision Does Not Mandate DA Testimony

Causation is an indispensable element of this malicious prosecution case. As we explained in *King*, "to recover for malicious prosecution when the decision to prosecute is within another's discretion, the plaintiff has the burden of proving that that decision would not have been made but for the false information supplied by the defendant."[8] So Crudup must prove not only that the Blanks furnished false information, but also that this false information caused Crudup to be prosecuted.[9]

In *King*, Kerr County district attorney Sutton testified in the malicious prosecution case brought by plaintiffs Graham and

3. 126 S.W.3d 75 (Tex.2003) (per curiam).

4. 179 S.W.3d at 50.

5. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex.2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding).

6. *Prudential*, 148 S.W.3d at 135 (citing *Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex. 1996)).

7. *In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex.2006) (per curiam) (orig. proceeding); *In re Bass*, 113 S.W.3d 735, 745 (Tex.2003) (orig. proceeding).

8. 126 S.W.3d at 78.

9. *See id.* at 76; *see also Browning–Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 292–93 (Tex.1994) (citing RESTATEMENT (SECOND) OF TORTS § 653 cmt. g (1977)).

Wren.[10] In rendering judgment for defendants, we wrote, "Graham and Wren offered no evidence whatever—*as by opinion from Sutton, for example*—that the decision to prosecute was based on any information supplied by King that Graham and Wren assert was false."[11] The *King* decision and our review of the *King* record do not reveal whether Sutton testified voluntarily or pursuant to a subpoena.

Crudup argues that "[a] necessary element for a malicious prosecution is the testimony of the District Attorney's office," and insists that this Court "has ruled that the testimony of the District Attorney's office is necessary to prove an element of malicious prosecution." This is assuredly wrong; nothing in *King* suggests that plaintiffs must provide direct evidence of causation or that prosecutors can be subpoenaed to provide live testimony regarding causation or anything else. In *King*, the district attorney did testify, and as this Court weighed but-for causation in that case, we noted that his testimony nowhere opined "that the decision to prosecute was based on any information supplied by [the defendant] that [plaintiffs] assert was false."[12] We summarized what the district attorney did and did not say and mentioned his testimony as merely one way causation could have been proved in that case. Our reference to the district attorney's testimony in *King*, however, did not announce a blanket privilege waiver or authorize plaintiffs to subpoena prosecutors to testify whenever plaintiffs wish to bolster the causation element of their malicious prosecution lawsuit.

## C. Crudup Cannot Overcome the DA's Testimonial Privilege

The United States Supreme Court first recognized the work-product doctrine 60 years ago in *Hickman v. Taylor*,[13] and our state discovery rules protect those materials prepared by or at the request of an attorney in anticipation of litigation.[14] As we have explained, "The primary purpose of the work product rule is to shelter the mental processes, conclusions, and legal theories of the attorney, providing a privileged area within which the lawyer can analyze and prepare his or her case."[15] The privilege continues indefinitely beyond the litigation for which the materials were originally prepared.[16] Moreover, the privilege covers more than just documents: it extends to an attorney's mental impressions, opinions, conclusions, and legal theories,[17] as well as the selection and ordering of documents.[18] The work product privilege is broader than the attorney-client privilege[19] because it includes all communications made in preparation for trial, including an attorney's interviews with parties and non-party witnesses.[20]

---

10. 126 S.W.3d at 78–79.

11. *Id.* at 78 (emphasis added).

12. *Id.*

13. 329 U.S. 495, 509, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

14. Tex.R. Civ. P. 192.5(a)(1).

15. *Owens–Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 750 (Tex.1991) (orig. proceeding) (citing *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 554 (Tex.1990)).

16. *Id.* at 751–52.

17. Tex.R. Civ. P. 192.5(b)(1).

18. *Nat'l Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 460 (Tex.1993) (orig. proceeding) (citing *Hickman*, 329 U.S. at 511, 67 S.Ct. 385).

19. *See* Tex.R. Evid. 503.

20. *See* Tex.R. Civ. P. 192.5(a)(1)-(2); *Hickman*, 329 U.S. at 512–13, 67 S.Ct. 385.

In the pending case, all of the DA's Office's work in connection with the criminal proceeding against Crudup, and relevant to the decision to bring criminal charges against him, constitutes work product, namely "material prepared or mental impressions developed in anticipation of litigation or for trial" or communications "made in anticipation of litigation or for trial . . . among a party's representatives" under Rule 192.5(a). The totality of the DA's work on the Crudup matter, as evidenced by the prosecution file, consisted of the preparation of a criminal charge against Crudup and the criminal litigation that followed. The trial court record indicates that Crudup was not interested in eliciting general factual testimony from DA witnesses regarding how the DA's Office receives, processes, and investigates criminal complaints. Crudup only subpoenaed DA employees who had been directly involved with his criminal case to testify in the civil case. He informed the district court, in his response to the Motion to Quash and For Protective Order, that he was interested in their testimony because "[t]he DA's office had numerous conversations with Defendant Cindy and because of these conversations they are fact witnesses to the statements made by Defendant Cindy." He stated in his motion for reconsideration that he needed the testimony in order to "present evidence of the conduct of the Defendants before the criminal case was initiated" and also "to present evidence of the conduct of the Defendants during the course of the criminal proceedings, especially as to the reason of the dismissal of the criminal case." In his briefing to this Court, he stresses that without DA testimony, he cannot prove the specific elements of malicious prosecution.

■ For purposes of his civil case, conversations made in the course of the criminal investigation, information learned during that investigation, and the DA's decision to drop the case all constitute work product as defined above, and while producing the prosecution file unquestionably waived protection of the documents themselves, that selective disclosure does not oblige DA staff to provide deposition and trial testimony interpreting, explaining, or otherwise elaborating on matters contained in the file. The dissent notes that Crudup may well want to quiz DA staff about various matters unrelated to the specifics of the prosecution against him: "testimony as to general procedures such as procedures of the DA's office for intake of criminal complaints, processing of those complaints, whether investigation is made into the facts of cases before criminal proceedings are instituted, and whether contacts are typically made with complaining witnesses before criminal proceedings are begun, during the proceedings, or after the proceedings are completed." 224 S.W.3d at 193. Crudup, however, has never expressed the slightest interest in such general matters, which might well be fair game; the record and his briefs to this Court show him focused solely on eliciting DA testimony regarding the specific events surrounding his criminal case and insisting that without such case-specific details, "he will not be able to prove every element of malicious prosecution."

Rule 192.5(b)(1) distinguishes everyday work product from "core work product" and makes clear that the latter—defined as "the attorney's or the attorney's representative's mental impressions, opinions, conclusions, or legal theories"—is inviolate and flatly "not discoverable," subject to narrow exceptions that are inapplicable here.[21] Core work product is sacrosanct

---

**21.** Rule 192.5(c) provides exceptions to the work-product privilege for:

and its protection impermeable. Assuming *arguendo* that the testimony Crudup seeks is non-core work product, which seems doubtful, Crudup still bears a heavy burden: he must show that he "has substantial need" for the testimony in the preparation of his case and that he "is unable without undue hardship to obtain the substantial equivalent of the material by other means." [22]

The court of appeals said it granted mandamus relief because "the DA's office has failed to meet its burden of showing any basis to quash the subpoenas." [23] This misses the mark. In the record, briefing, and oral argument, Crudup continued to demonstrate his intention to interrogate the DAs about case-specific details. Such testimony would unquestionably require the disclosure of DA work product, which, at a minimum, places the burden on Crudup to show a "substantial need" for the testimony and the inability to obtain its substantial equivalent by other means without "undue hardship."

■■■ Addressing the first prong, "substantial need," Crudup contends that he "will not be able to prove an element of his case" (namely, causation) without testimony from the prosecutors. To be sure, granting Crudup access to live DA testimony might improve his chances in court, but improving a civil litigant's odds of winning is not enough. Substantial need is not merely substantial desire. Prosecutors could win more convictions absent the Fifth Amendment, or the priest-penitent privilege, or the marital privilege, but we safeguard these privileges and others because they advance a greater societal good. Like every litigant, Crudup wants to strengthen his lawsuit, understandably so, but that cannot trump a settled privilege and justify a wide-ranging excavation of prosecutorial decision-making.

■■■ The second prong is inability to obtain the substantial equivalent of the requested material. As stated above, Crudup cannot win his malicious prosecution suit without showing that false information supplied by the Blanks to the DA's Office caused the DA to prosecute.[24] The DA's Office, however, has already provided Crudup with the substantial equivalent of testimony: it has, pursuant to a subpoena *duces tecum*, turned over its entire prosecution file, which contains notes related to the investigation, sheriff's department complaint reports, Travis Blank's affidavit to the sheriff's department detailing Crudup's alleged threat, and McCabe's log of conversations with Cynthia Blank that ultimately prompted him to dismiss the criminal charges. Many if not all of these documents might come into evidence either through a non-hearsay use or as an

---

(1) information discoverable under Rule 192.3 concerning experts, trial witnesses, witness statements, and contentions; (2) trial exhibits ordered disclosed under Rule 166 or Rule 190.4; (3) the name, address, and telephone number of any potential party or any person with knowledge of relevant facts; (4) any photograph or electronic image of underlying facts (e.g., a photograph of the accident scene) or a photograph or electronic image of any sort that a party intends to offer into evidence; and (5) any work product created under circumstances within an exception to the attorney-client privilege in Rule 503(d) of the Rules of Evidence.

A "witness statement" under Rule 192.3(h) includes signed witness statements and recorded statements, but does not include "[n]otes taken during a conversation or interview with a witness."

**22.** TEX.R. CIV. P. 192.5(b)(2).

**23.** 179 S.W.3d at 51.

**24.** *See King,* 126 S.W.3d at 78.

exception to hearsay.[25] Any false statements made by the Blanks to the DA, for example, would not constitute hearsay if offered for their effect on the listener rather than for the truth of the matter asserted.[26] And Crudup has already taken a deposition on written questions of the DA's custodian of records in order to establish that the prosecution file contains records of a regularly conducted activity under Rule 803(6). Crudup is not required to produce live testimony from a prosecutor, and he might well be able to prove his case through alternative means, including (1) circumstantial evidence, (2) trial testimony and pretrial discovery from the Blanks, and (3) expert testimony on prosecutorial decision-making and whether the file suggests the DA would not have charged Crudup but for the allegedly false information. Rule 192.5 strikes a sensible balance, recognizing that a lawyer's thoughts are his own and that a party cannot invade every nook and cranny of a lawyer's case preparation, particularly when the "essence" of what the party seeks has already been revealed to him or is readily available.[27] Indeed, while insisting he needs live testimony to prove Blank's malice, Crudup's brief concedes that the prosecution file contains all the evidence he needs: "The notes of District Attorney McCabe clearly indicate the malice of Cynthia Blank."

Understandably, Crudup desires live testimony to fortify his case, but Rule 192.5(b)(2) is not nearly so permissive. Even assuming the testimony sought is non-core work product, Crudup's burden of showing causation in his malicious prosecution suit is insufficient to constitute "substantial need." Nor has Crudup shown an inability to obtain the substantial equivalent of the testimony sought without "undue hardship." If anything, when it comes to affecting Crudup's burdens at trial, the DA's disclosure of its prosecution file did more to alleviate than to aggravate.

## D. The DA Has Not Consented to Testify by Producing the File

Crudup alternatively argues that the DA waived the privilege under Texas Rule of Evidence 511(1) and cannot resist testifying. Again, we disagree. Rule 511(1) provides that a person waives a privilege against disclosure if he "voluntarily discloses or consents to disclosure of any significant part of the privileged matter. . . ." Although the DA's Office turned over its prosecution file without objection, which waived the work-product privilege as to the file's contents, the record is devoid of any indication that by doing so the DA likewise enlisted its current and former personnel to testify in Crudup's malicious prosecution suit regarding their case materials and related impressions and communications. The DA's waiver here is limited, not limitless, and agreeing to produce a prosecution file does not in itself require the DA to produce its personnel so that their mental processes and related case preparation may be further probed.

We therefore hold on this record, given the protected nature of what Crudup intends to elicit, that the DA's selective disclosure of the prosecution file, while waiving the privilege as to the documents themselves, does not waive the DA's testimonial work-product privilege regarding the prosecutor's mental processes; nor did the DA's file disclosure itself give rise to a

---

**25.** *See* TEX.R. EVID. 801(e)(2) (admission by party-opponent); *id.* 803(6) (records of regularly conducted activity); *id.* 803(8)(A), (C) (public records and reports).

**26.** *See id.* 801(d).

**27.** *See Hickman,* 329 U.S. at 509, 67 S.Ct. 385.

"substantial need" or "undue hardship" sufficient to overcome the privilege that protects non-core work product.

## III. Conclusion

Direct prosecutor testimony is not required to prove causation and malice in malicious prosecution suits. Nor, on this record, did the DA's Office waive its work-product privilege against testifying by producing the prosecution file. Given the nature of what Crudup seeks and his inability to show both "substantial need" and "undue hardship" under Rule 192.5(b)(2), he cannot force DA personnel to discuss their mental processes or other case-related communications and preparation, even if the subpoenaed testimony relates to documents already produced.

We conditionally grant the petition for writ of mandamus and direct the court of appeals to vacate its writ of mandamus and to reinstate the trial court order quashing the subpoenas and issuing a protective order.[28] The writ will issue only if the court of appeals fails to comply.

Justice WILLETT delivered a concurring opinion.

Justice JOHNSON delivered a dissenting opinion, in which Chief Justice JEFFERSON and Justice MEDINA joined.

Justice GREEN did not participate in the decision.

Justice WILLETT, concurring.

Privileges, to be effective, must be predictable; an uncertain privilege, or one subject to widely varying applications, is barely better than no privilege at all.

The United States Supreme Court declared a generation ago, "Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital."[1] In my view, mandating testimony from DA personnel on these facts would impose an unwarranted burden on our State's finite prosecutorial resources and impede the vigorous deployment of such resources.

When interpreting the rules of procedure and evidence, courts must always be mindful of the mandates of Rule of Civil Procedure 1 and Rule of Evidence 102. The former declares this paramount objective: "to obtain a just, fair, equitable and impartial adjudication ... with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable." The latter states a similar overarching purpose: "to secure ... elimination of unjustifiable expense and delay." These two policy pronouncements, both adopted by this Court, govern construction of the rules and require the promotion of fair and efficient proceedings. And both rules necessarily inform our analysis of whether Texas law permits private plaintiffs to force DA testimony in cases like this.

The DA's Office's brief advances various practical reasons for its view that "turning every prosecutor's office into civil litigants' private investigators and witnesses on the public's dime is not sound public policy." One argument is that allowing malicious prosecution plaintiffs to commandeer DA personnel to testify under a Rule 511 waiver theory would actually cause plaintiffs more problems than it would cure. I agree with the DA's Office that granting

---

**28.** *See* Tex.R.App. P. 52.8(c).

**1.** *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

Crudup's demand for live testimony would, if anything, *exacerbate* evidentiary challenges for future malicious prosecution plaintiffs. District attorneys are chiefly focused on their criminal caseloads—"the primary duty of all prosecuting attorneys ... [is] to see that justice is done"[2]—not on being taxpayer-funded witnesses and investigators in private damages suits. If selective production of a case file effected a sweeping subject-matter waiver that forfeited the testimonial privilege and obliged DAs to endure civil depositions, hearings, and trials while their criminal caseloads languished, prosecutors would simply forswear cooperation altogether and never disclose anything. Plaintiffs like Crudup would then be forced to prove "substantial need" and "undue hardship" for each individual document in the prosecutor's file, a laborious practice that would succeed only in wasting time and expense for the bench and bar alike.

The Court properly limited the scope of the work-product waiver resulting from the DA's disclosure to the documents themselves, not to live testimony concerning the thoughts and communications underlying each document's contents.

I write separately only to make these practical points, which while unnecessary to our holding today, are nonetheless compelling.

Justice JOHNSON, joined by Chief Justice JEFFERSON and Justice MEDINA, dissenting.

The trial court quashed trial subpoenas and granted a protective order shortly before trial was scheduled to start in a mali-cious prosecution case, effectively excluding all testimony from current and former employees of the Bexar County Criminal District Attorney's office who participated in prosecuting the underlying criminal case. The trial court's action was based on an unsworn "Motion to Quash Trial Subpoenas and For Protective Order" filed by the DA's office and argued by the parties without testimony or evidence. I agree with the court of appeals that based on this record the trial court abused its discretion in quashing the subpoenas.

The Bexar County District Attorney's office filed its unsworn motion in late February 2005 in a malicious prosecution suit filed by David and Annette Crudup. The motion related that DA investigator Al Larry, assistant DA Sylvia Cavazos, and former assistant DA Robert McCabe had been served with subpoenas on behalf of the Crudups to give trial testimony in early March in the 166th District Court in San Antonio. The motion stated that "The [DA's] Office objects, on its behalf and on behalf of these individuals, to their required appearance and testimony based on the work product privilege." By its motion the DA's office claimed that testimony based on the individuals' work or by reference to the DA's records should be found privileged; that the mental impressions, opinions, conclusions, legal theories and strategies of an attorney and the attorney's employees which were "prepared in anticipation of litigation or for trial" were privileged; and that the DA's entire litigation file was privileged.[1] The motion requested that the subpoenas be quashed

---

**2.** Tex.Code Crim. Proc. art. 2.01.

**1.** The DA's motion arguably sought protection for the contents of its case file. The trial court's order granted the motion without specifying whether the material in the DA's case file was going to be excluded from evi-dence as work product or whether the court only quashed the trial subpoenas. The DA disclaims any issue as to the documents which were produced and asserts that the only issue is whether the subpoenas were properly quashed.

and a protective order granted. The motion did not mention that the DA's litigation case file had been produced in August 2003 in response to a subpoena *duces tecum* or that an assistant DA had given a deposition on written questions at that time to prove the file as a business record. Nor did the motion claim that (1) the file had been involuntarily or mistakenly disclosed; (2) testimony of the subpoenaed witnesses would not be relevant to the civil suit or that the witnesses did not possess knowledge of facts relevant to the suit; (3) there had been other instances of DA employees or attorneys having been subpoenaed to give testimony in malicious prosecution cases and that testifying in such suits was becoming burdensome; or (4) the witnesses' attendance at court in this particular suit would disrupt the work of the DA's office.[2] McCabe, who no longer worked for the DA, did not urge that his attendance at court would work a hardship or that he needed some accommodation as to the time or date of his attending court.

The Crudups' response asserted, in part, that (1) the subpoenaed individuals were fact witnesses based on their having had conversations with real party in interest Cindy Blank and testimony about such conversations was not privileged; (2) even if some documents in the DA's file might ordinarily be privileged work product, not all documents in the file would be privileged as work product; and (3) the DA's entire file had already been produced in response to a subpoena *duces tecum*, had been on file in the civil case for over a year, and any privilege which might otherwise exist as to the contents of the file was waived. A copy of the DA's case file and the written deposition questions and answers proving it up were attached to the

response. Following a hearing at which no evidence was introduced, the trial court quashed the subpoenas.

The DA's argument relies to a significant degree on our opinion in *State ex rel. Curry v. Walker*, 873 S.W.2d 379 (Tex. 1994). The DA cites *Walker* in support of its position that the work-product privilege exempts its entire litigation case file from discovery. In *Walker* a subpoena *duces tecum* was issued for:

> Any and all records, books, papers, documents written memoranda [sic], handwritten notes, photographs and videotapes, including but not limited to the entire file(s) in your possession or under your custody or control, indictments, arrest records, investigation, punishment evidence, forensics, internal correspondence and memos regarding the arrest and subsequent conviction of [NAME OF DEFENDANT] on September 27, 1993.

*Id.* at 380.

Before the file was produced in *Walker* the DA moved to quash the subpoena and for a protective order. The trial court examined the DA's files *in camera*, directed that certain documents comprising work product be withheld and directed production of the remaining documents, including police reports, court documents, photographs, etc. We conditionally granted a writ directing the trial court to rescind that part of its order denying the DA's motion to quash. In doing so, we stated:

> In effect, this requires the District Attorney to produce his entire litigation file, except for documents involving direct communications. This order is too broad. In *National Union Fire Insur-*

---

**2.** The motion was signed by an Assistant Civil Division DA whose address was listed as 300 Dolorosa in San Antonio. The record gives the address of the Bexar County Courthouse as 100 Dolorosa—apparently a short distance from the DA's office.

*ance Co. v. Valdez,* 863 S.W.2d 458, 460 (Tex.1993, orig. proceeding), we stated that "[a]n attorney's litigation file goes to the heart of the privileged work area guaranteed by the work product exemption. The organization of the file, as well as the decision as to what to include in it, necessarily reveals the attorney's thought processes concerning the prosecution or defense of the case."
*Id.* The DA's reliance on *Walker* is misplaced.[3]

First, in the case before us the file was produced over a year before the DA filed the motion to quash. The subpoena *duces tecum* pursuant to which the Bexar County DA's office produced its file in 2003 required the production of all records relating to, and the case file for, the prosecution of David Crudup. The testimony of the assistant DA in response to the subpoena was that all the requested records had been produced. To the extent that the DA's work product was disclosed by documents, notes, trial preparatory memoranda, organization of the case file or in any other way by the file, the privilege was waived long before the DA's motion was filed in February 2005. *See* Tex.R. Evid. 511(1); *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 554 (Tex.1990).

Second, the objects of the DA's motion to quash were witnesses. The work product privilege precludes testimony or discovery as to types of information; it does not make persons privileged from testifying. Witnesses are not the same as documents. Documents have fixed contents that can be analyzed to determine whether the documents and their contents are privileged. But the full knowledge of a witness as to facts and matters relevant to claims made in a lawsuit can hardly ever be known, and the testimony of a witness is not fixed until after the witness has completed testifying. It is only while witnesses are testifying or after they have testified that the admissibility or privileged nature of their testimony can be determined. Witnesses occasionally are instructed, upon timely and proper motion, not to answer certain questions because the questions seek testimony as to matters which are privileged or are otherwise inadmissible. But if the questions are rephrased the witnesses then may sometimes be allowed to answer. Lawyers may be instructed not to ask witnesses about certain matters, such as privileged work product, but that does not preclude lawyers from asking, and witnesses from testifying about, other matters.[4] For example, testimony as to general procedures such as procedures of the DA's office for intake of criminal complaints, processing of those complaints, whether investigation is made into the facts of cases before criminal proceedings are instituted, and whether contacts are typically made with complaining witnesses before criminal proceedings are begun, during the proceedings, or after the proceedings are completed would not be work product as to the Crudup prosecution. Yet such testimony was encompassed by the DA's motion and is precluded by the trial court's order.

There is no rule that gives an attorney or an attorney's employees a privilege

---

**3.** Even though *Walker* dealt with discovery matters and the case before us deals with trial testimony, neither party contends that the principles to be applied in determining privilege and waiver are different in the different settings. Both parties rely on cases involving discovery matters.

**4.** *See* Tex.R. Civ. P. 199.5(d)-(g) and 199.6 as to conduct of oral depositions and assertion of privilege from testifying.

from being called to testify. Texas Rule of Evidence 501 provides that:

> Except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority, no person has a privilege to:
>
> > (1) refuse to be a witness;
> >
> > (2) refuse to disclose any matter;
> >
> > (3) refuse to produce any object or writing; or
> >
> > (4) prevent another from being a witness or disclosing any matter or producing any object or writing.

Privileges are addressed in Article V of the Texas Rules of Evidence. The DA's office does not cite a provision of Article V, any rule, or a Constitutional or statutory provision which allows its attorneys and employees to be completely exempted from attending court or testifying as to facts or relevant matters within their knowledge. The DA cites an exemption only for testimony as to one area: work product. The work product privilege in our rules of civil procedure allows the DA employees to be protected from testifying as to the subject matter of their work product and that protection continues past termination of the criminal case and applies in a situation such as that before us. *Owens–Corning Fiberglas Corp. v. Caldwell,* 818 S.W.2d 749, 751–52 (Tex.1991). However, the privilege is not a general exemption from being called as a witness. It is limited and as relevant here extends to (1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, employees, or agents; or (2) communications made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, employees, or agents. *See* Tex.R. Civ. P. 192.5(a). The privilege does not extend to protecting facts the attorney or the attorney's representatives may acquire. *Owens–Corning Fiberglas Corp.,* 818 S.W.2d at 750 and n. 2; *Axelson,* 798 S.W.2d at 554.

In *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), cited by the Court, the United States Supreme Court addressed the question of whether either written witness statements in possession of, or oral witness statements made to, an attorney in the case at bar had to be produced to opposing parties in response to a pretrial discovery request. The witness statements being discussed were not made by a non-client witness to an attorney in another case, as is the situation with the Crudups, nor were the witness statements asserted to be evidence in another proceeding. They were witness statements taken by an attorney as part of trial preparation in the case in which the discovery was sought. In addressing disclosure of any such oral witness statements, the *Hickman* Court noted that:

> Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness.... Denial of production of this nature does not mean that any material, non-privileged facts can be hidden from the petitioner in this case.

*Id.* at 513, 67 S.Ct. 385. In a concurring opinion, Justice Jackson noted that the question of depriving a litigant of *evidence* was not involved:

> It seems clear and long has been recognized that discovery should provide a party access to anything that is evidence in his case. It seems equally clear that discovery should not nullify the privilege of confidential communication between attorney and client. But those princi-

ples give us no real assistance here because what is being sought is neither evidence nor is it a privileged communication between attorney and client.

*Id.* at 515–16, 67 S.Ct. 385 (Jackson, J., concurring) (citation omitted). As to statements signed or written by witnesses, "Such statements are not evidence for the defendant.... Nor should I think they ordinarily could be evidence for the plaintiff." *Id.* at 519, 67 S.Ct. 385.

In *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the Supreme Court addressed the work-product privilege as to an investigator's report when the investigator was called as a witness in the criminal trial. The Court held that under the circumstances the privilege was waived. *Id.* at 239–40, 95 S.Ct. 2160. Justice White, in a concurring opinion joined by then-Justice Rehnquist, questioned the Court's reaching the "waiver" issue before determining what protection the report had in the first instance. Justice White opined that the work-product doctrine of *Hickman* could not be

> extended wholesale from its historic role as a limitation on the nonevidentiary material which may be the subject of pretrial discovery to an unprecedented role as a limitation on the trial judge's power to compel production of evidentiary matter at trial....
>
> [T]he work-product doctrine of *Hickman v. Taylor, supra,* has been viewed almost exclusively as a limitation on the ability of a party to obtain pretrial discovery. It has not been viewed as a "limitation on the broad discretion as to evidentiary questions at trial."

*Id.* at 242–43, 95 S.Ct. 2160 (White, J., concurring). As to the work-product privilege and trial evidence Justice White continued:

> Indeed, even in the pretrial discovery area in which the work-product rule

does apply, work-product notions have been thought insufficient to prevent discovery of *evidentiary and impeachment* material. In *Hickman v. Taylor,* 329 U.S. at 511, 67 S.Ct. 385, the Court stated: "... Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had...." Pursuant to this language, the lower courts have ordered evidence to be turned over pretrial even when it came into being as a result of the adversary's efforts in preparation for trial ...

> Accordingly, it would appear that with one exception to be discussed below, the work-product notions of *Hickman v. Taylor, supra,* impose no restrictions on the trial judge's ordering production of evidentiary matter at trial; that these notions apply in only a very limited way, if at all, to a party's efforts to obtain evidence pretrial pursuant to discovery devices....

*Id.* at 249–51, 95 S.Ct. 2160 (emphasis in original). Justice White then referenced an example of such a disclosable fact: "A member of a defense team [who] witnesses an out-of-court statement of someone who later testifies at trial in a contradictory fashion becomes at that moment a witness to a relevant and admissible event...." *Id.* at 250, 95 S.Ct. 2160. Although Justice White was addressing whether notes of the defense team member concerning the witness's statement should be disclosed in the trial for which the notes were prepared, a matter on which Texas and federal procedure might differ, the substance of his example applies to the situation before us. Attorneys and members of an attorney's trial-preparation team may in some circumstances be fact witnesses to matters and events.

Furthermore, to the extent a work product privilege exists, it can be waived. *Nobles,* 422 U.S. at 239, 95 S.Ct. 2160. Texas rules and practice are in accord. If a privilege applies, it is waived if the "person or a predecessor of the person while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure is itself privileged." TEX.R. EVID. 511(1); *see Axelson,* 798 S.W.2d at 554.

In disputes such as this, the burden of proceeding and producing evidence must be on one of the parties. The trial court effectively placed the burden on the Crudups to show why the DA's attorneys and employees should be required to testify and what information or facts would be elicited from them. That is different from the placement of the burden by Texas Rule of Evidence 501 and our prior cases. We have previously required the party resisting testifying or having its employees testify to shoulder the burden of properly asserting a privilege and showing that it applied to the testimony in question. *See Huie v. DeShazo,* 922 S.W.2d 920, 926 (Tex.1996) (orig. proceeding); *Peeples v. Honorable Fourth Supreme Judicial Dist.,* 701 S.W.2d 635, 637 (Tex.1985) (orig. proceeding); *Giffin v. Smith,* 688 S.W.2d 112, 114 (Tex.1985) (orig. proceeding). *See also* TEX.R. CIV. P. 199.6 (providing that a party seeking to avoid having a witness give deposition testimony on the basis of privilege is required to provide evidence to support the claim of privilege in the form of testimony or affidavits served before hearing on the privilege claim). The quashed subpoenas in this case were not discovery inquiries requesting the DA's office to disclose specific information to which the motion for protective order was directed. They were trial subpoenas which would require the witnesses to testify generally. At a minimum the trial court

should have required the DA's office to show what particular knowledge and information possessed by its employees was work product for which the privilege had not been waived. It then could have limited the Crudups' inquiries pending further development of a record. Because this record is clear that the DA did not make any such showing, the DA's employees were not entitled by law or rule to refuse to be witnesses and testify, even if some testimony as to their knowledge, information, and mental processes was later properly excluded upon objection. TEX.R. EVID. 501(1), (2); 511(1). Nor was the DA's office entitled to prevent its employees from being witnesses and testifying absent such showing. TEX.R. EVID. 501(4).

The Court concludes that conversations between the DA's office and Blank during the course of the criminal charge investigation were work product. But Blank was a non-party to the criminal proceeding and was not an employee of the state. The DA's office did not offer any proof that more conversations between Blank and DA employees took place than were memorialized by the DA's file. Apart from information disclosed by notes in the DA's file, for which the privilege had been waived by disclosure, the content of statements made by Blank to the DA's employees, if any, might be work product. *See* TEX.R. CIV. P. 192.3(h). But even in the absence of a record showing there were more conversations between Blank and the employees than are disclosed in the DA's file and assuming there were, statements made by the DA's employees to Blank arguably, if not conclusively, were not privileged. The DA's office did not show that any conversations between its employees and Blank not memorialized in its litigation file included work product, that is, either (1) material prepared by the DA's office or its employees for, or mental impressions of its

employees developed in anticipation of, the criminal trial; or (2) communications made in preparation for the criminal trial between a party and the party's representatives. *See* Tex.R. Civ. P. 192.5(a). If the DA's employee's statements to Blank did not include work product, the statements were not privileged to start with. If the statements to Blank disclosed work product, the privilege as to the material disclosed was presumptively waived and the DA would have had the burden to prove or show why the conversations did not effect a waiver of privilege as to the disclosed matters. *See* Tex.R. Evid. 511(1); *Jordan v. Court of Appeals for Fourth Supreme Judicial Dist.,* 701 S.W.2d 644, 648–49 (Tex.1985) (orig. proceeding); *see also Axelson,* 798 S.W.2d at 553–54 ("Since there was evidence that the investigation [which was being claimed as privileged work product] was disclosed to the FBI, IRS, and the *Wall Street Journal,* the court of appeals properly held that these privileges had been waived."); *Nat'l Union Fire Ins. Co. v. Hoffman,* 746 S.W.2d 305, 311 (Tex. App.-Dallas 1988) (orig. proceeding). And, to the extent that documents memorializing the conversations had been produced and the privilege as to their contents thereby waived, the DA's employees had no privilege to refuse to testify about them. *See* Tex.R. Evid. 501; *Hoffman,* 746 S.W.2d at 311 (holding that attorneys who authored letter to client which had been disclosed could be examined about the letter despite claim of attorney-client privilege).

Because the Crudups' response raised the question of disclosure of the DA's work product both by disclosure of the DA's litigation file and by its employees' conversations with Blank, the question of waiver of privilege was raised and the DA had the burden of proving that no waiver occurred. *See Jordan,* 701 S.W.2d at 648–49. Even though the Crudups did not have the bur-

den to proceed, given the state of the record, their response to the motion specifically set out some reasons the DA's motion should be denied. As noted above, those reasons included assertions that (1) the subpoenaed witnesses were fact witnesses because they had conversations with real party in interest Cindy Blank and testimony about those conversations was not privileged; and (2) prior production of the DA's file waived any privilege as to contents of the file. The Crudups provided support for their response: a copy of the DA's file. The file contains, among other matters, a report from investigator Larry and notes documenting progress of the prosecution and conversations between Blank and assistant DAs handling the case. At least one of the conversations took place after the criminal proceeding was dismissed. As previously noted, the DA was representing the State in the criminal proceeding against David Crudup; Blank was neither a party to the proceeding nor an employee of the state; and the DA did not prove any reason that the content of its employees' conversations with such a non-party witness was privileged work product. If the DA's employees disclosed work product to Blank in the conversations or by disclosure of the file and if either disclosure was significant, then waiver may have occurred as to more of the DA's work product than just the amount disclosed. *See* Tex.R. Evid. 511(1). Intuitively, one could speculate that there remained some of the DA's work product for which the privilege had not been waived. But speculation is not sufficient: proof is required.

In their motion for reconsideration of the trial court's order, the Crudups attached and quoted individual notes from the DA's file setting out the contents of a conversation between Blank and the assistant DA handling the prosecution. They

again urged that the contents of notes reflecting conversations were a proper subject of testimony from the subpoenaed witnesses. The DA's office still did not attempt to show authority for or offer evidence to support its employees being exempt from giving testimony as to contents of the notes. The trial court denied the Crudups' motion to reconsider.

The quashing of subpoenas by the trial court on this record turned the procedure for protecting privileged work product upside down. Instead of the DA having to show why its employees who had knowledge of relevant matters should be protected from testifying, the Crudups' attorney had to try to preserve his clients' right to call witnesses by disclosing *his* work product in pleadings and argument in the trial court and setting out testimony he wanted to elicit from the subpoenaed employees. He has had to continue that course through two appellate court proceedings.

Unlike the situation in *Walker* where the district attorney challenged an overly broad subpoena and court order, here it was the DA's office that made an overly broad request seeking an order from the trial court permitting witnesses to refuse to give testimony. *See* TEX. R. EVID. 501; *Walker*, 873 S.W.2d at 380. If the DA's office had sought only to preclude testimony as to work product, the privileged nature of the subject matter might not have required much, if any, proof. The trial court could have entered a protective order precluding the Crudups' attorney from inquiring into certain matters pending further orders of the court. Then as the trial proceeded the court would have had the benefit of at least some record on which to base its decision as to both the existence of privilege as to the subject matter and whether waiver of the privilege as to the specific testimony sought had

occurred. When the DA's office ended its pretrial presentation in the trial court without providing proof that all of the testimony the subpoenaed witnesses could give would be work product for which the privilege had not been waived, however, that should have been the end of the matter as to the motion to quash. There was no evidence to support the trial court's order which effectively granted a privilege to the DA's employees and attorneys from testifying at all, and the motion should have been denied. *See* TEX.R. EVID. 501. The motion should have been denied also because the question of waiver of the privilege by disclosure was raised and there was not evidence that waiver had not occurred. *See* TEX.R. EVID. 511(1).

A quote from the United States Supreme Court which we have previously referenced is applicable here:

"Proper presentation of a client's case demands that (the attorney) assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference."

*Nat'l Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 461 (Tex.1993) (quoting *Hickman*, 329 U.S. at 511, 67 S.Ct. 385). Much evidence can be presented in different ways. For example, records of events can be read or witnesses can be called to testify as to the matters covered by the records; witnesses can be called live or by reading depositions; or several witnesses can be called to present evidence (hopefully non-repetitiously) which could be presented by one witness when the impact of calling multiple witnesses will be greater in the trial lawyer's judgment than using only one witness to tell the story. Decisions about how evidence will be presented at trial so as to maximize the client's chances of prevailing are among the most

important a trial lawyer must make. In this case the trial court's order unduly interfered with the Crudups' attorney's trial preparation and forecloses certain choices as to how his client's case can be presented at trial. Among other problems it creates, the trial court's order (1) impairs the Crudups' attorney's ability to determine how best to present the Crudups' case to the jury because he cannot count on having the subpoenaed witnesses (or any other witness from the DA's office) available to testify; (2) forecloses the Crudups' attorney from using live testimony to present and explain matters disclosed by the DA's file such as the dates of contact with Blank, the substance of conversations with her and both the existence and substance of reports from police officers and investigators; and (3) keeps the Crudups' attorney from asking DA employees to interpret notes they made in the case file, or even whether records of all conversations with complaining witnesses were made.

The Crudups' counsel has maintained that he planned to prove that the complaint made by the Blanks to the DA was false and that the DA would not have filed the criminal proceedings absent the false complaint. Maybe he can; maybe he can't. But counsel was entitled to formulate and pursue trial strategy without having it limited by a preemptive exclusion of certain witnesses with knowledge of relevant matters or having to disclose his strategy and justify it in pretrial and appellate proceedings simply because the DA's office filed a motion such as the one it filed.

I would deny the relief sought by the DA's office. *See State v. Biggers,* 360 S.W.2d 516, 517 (Tex.1962).