**TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN**

NO. 03-24-00283-CV

In re Sneed, Vine & Perry, P.C.

**ORIGINAL PROCEEDING FROM WILLIAMSON COUNTY**

**M E M O R A N D U M   O P I N I O N**

In this original proceeding, relator Sneed, Vine and Perry, P.C. (Sneed) seeks mandamus relief from the trial court's April 18, 2024 Order granting a motion to compel the deposition of Sneed's corporate representative filed by the real parties in interest. The real parties in interest are several members of the Hirschler family (the Hirschlers), DanDan Zou, Texas Investment Regional Center, LLC, Jacob Novak, and Hines Investment Management Holdings Limited Partnership and HIMH GP, LLC (collectively, Real Parties).[1] The Real Parties sought to compel the deposition of Wayne Sanders, one of the attorneys of record in the underlying case, regarding case-specific details of prior litigation. Sneed argues that this unrestricted deposition would require Sanders to reveal details about the prior litigation that are protected by the work-product privilege and the attorney-client privilege. On April 18, 2024, the trial court granted the Real Parties' motion to compel and allowed the deposition to proceed.

---

[1] For the remainder of this memorandum opinion, "Real Parties" refers to the Hirschlers, who are the plaintiffs in the underlying suit.

The order did not provide for any limitations, such as a limited scope or entry of a protective order.

Sneed argues that the trial court abused its discretion because (1) the ordered deposition would force Sanders to reveal privileged information including work product and attorney-client communications, and (2) in the event the deposition did not implicate work-product concerns, the trial court should have limited the scope of questioning and entered a protective order to guard against the disclosure of potentially privileged information. For the reasons explained below, we conditionally grant the petition for writ of mandamus. *See* Tex. R. App. P. 52.8(c).

**FACTUAL AND PROCEDURAL BACKGROUND**

The underlying suit involves a foreclosure action that occurred in October 2020. Texas Investment Regional Center, LLC (TexIRC) is the manager of Hospitality Fund, a manager-managed Texas company formed for the purpose of funding the development and operation of a nationally branded full-service hotel with a conference center and parking garage in Georgetown, Texas. The Hirschlers are immigrants to the United States who invested in Hospitality Fund as part of their efforts to obtain lawful permanent residence in the United States under the federal EB-5 program.[2] The hotel was profitable for a few years until 2020, when its profits were significantly affected by the COVID-19 pandemic. On October 13, 2020, the senior lender of the hotel, Woodforest National Bank, noticed the hotel for foreclosure. In an attempt to

---

[2] The EB-5 Program allots visas to immigrant-investors who have "invested . . . capital" in a new commercial enterprise that "will benefit the United States economy and create full-time employment" for not fewer than ten citizens or non-citizens. *See* 8 U.S.C. § 1153(b)(5)(A)(i)-(ii).

stay the foreclosure, DanDan Zou, who was the manager of TexIRC, and TexIRC (collectively, Regional Center) retained Wayne Sanders of Sneed, Vine and Perry, P.C. as litigation counsel. Sanders filed suit in state court in Williamson County on behalf of Regional Center in an attempt to stay the foreclosure (the Foreclosure Action).[3]  The trial court denied Regional Center's request for a temporary restraining order (TRO).  Regional Center then sought relief from this Court by filing a petition for writ of mandamus and an emergency motion to stay.  This Court granted Regional Center's request for a stay of proceedings, but it was too late.[4]  The hotel was foreclosed upon on November 3, 2020 (the same day this Court granted Regional Center's request for a stay).  As a result, the Real Parties filed this underlying proceeding against Regional Center, alleging that Regional Center's role in allowing the foreclosure to occur constituted breach of fiduciary duty, failure to make adequate disclosures, and breach of contract.

In August 2023, about one year after the Real Parties filed suit, they filed a notice to take the oral and videotaped deposition of Wayne Sanders, which was accompanied by a subpoena.  The notice did not provide for a limited scope of questioning.  In explaining the reason for the notice, the Real Parties' attorney sent an email to Sanders which stated:

> When we deposed DanDan Zou and asked her about the foreclosure of the property, she stated we would have to ask you. [We] would like to schedule a short deposition with you specifically to question the foreclosure of the property.

---

[3] *See* No. 20-1750-C26, *Hospitality Fund of Cent. Tex., LLC, v. 1101 Woodlawn Note Holder, LLC et al.*, in the 26th Judicial District of Williamson County, Texas.

[4] *In re Hospitality Fund of Cent. Tex., LLC,* 03-20-00524-CV, 2020 WL 6703831 (Tex. App.—Austin Nov. 3, 2020) (orig. proceeding).

The referenced deposition testimony included the following exchange between the Real Parties' counsel and DanDan Zou:

> Q: Did you personally do anything to stop Mr. Sanders from taking immediate action with the [Third] Court of Appeals to stop the foreclosure before 10:00 a.m. on the morning of the foreclosure?
>
> A. No.
>
> Q: Would Mr. Sanders be the only one that would be able to explain what happened with respect to the gap in time between this [stay order] from the Third Court of Appeals and the foreclosure actually having already occurred?
>
> [Zou's attorney]: Objection.
>
> A. I – I don't –
>
> Q: (By Mr. Richie): Anybody else that you know that could explain that?
>
> A: No.

As Sanders was litigation counsel for Zou in the Foreclosure Action and in the underlying suit, he objected to the notice on the basis of privilege and filed a combined motion to quash the deposition and motion for a protective order. On November 9, 2023, the trial court granted the combined motion to quash and for protective order in part—but allowed the Real Parties to take Sanders's deposition by written questions (DWQs). In ruling on the motion to quash at the hearing, the trial court directed Real Parties to frame their questions as "whens" versus "whys", stating that "the 'why' is [when you begin to] step over that line and begin to try to get into the thought processes of opposing counsel, and that would not be permitted." The Real Parties served their DWQs on Sanders, with questions that Sneed argues were directed into

4

Sanders's thought processes, including asking Sanders what he knew during his representation of Zou in the Foreclosure Action and why he did or did not take certain actions. Other questions included the logistics surrounding the Foreclosure Action, including the dates and times for certain legal filings and proceedings such as the initial motion for TRO, the TRO hearing, and the petition for writ of mandamus. The questions also asked Sanders specifically about the foreclosure sale, including the number of bidders present, whether Sanders did anything to stop the auction (and if not, why he did not take actions to stop the auction), and whether Sanders ever considered contesting the foreclosure sale in court (and if not, why not). In addition, they asked Sanders if he ever considered filing for bankruptcy to obtain an automatic stay of the foreclosure proceedings.

Through counsel, Sanders filed objections and responses to the DWQs. Sanders answered some of the written questions, but declined to answer several of them, citing work-product and attorney-client privileges. Dissatisfied with the written answers, on January 18, 2024, the Real Parties filed a motion to compel the oral, in-person deposition of Sanders. Then, on January 30, 2024, the Real Parties also noticed the deposition of the corporate representative of Sneed, Vine and Perry, P.C., where Sanders is a partner.[5]

The list of deposition topics in the notice for the corporate representative deposition contained the same topics addressed in the original DWQs to Sanders. Regional

---

[5] While not clear from the record, it appears that the Real Parties noticed the "corporate representative" of Sneed, Vine and Perry, P.C. to circumvent the trial court's November 9, 2023 order granting the motion to quash. In a letter to the Real Parties' counsel who noticed the deposition, Sanders wrote that the notice "continues your persistent and inappropriate attempts to depose attorneys in this case and is in direct contravention to a prior order of the Court . . . [w]e feel confident that the Court will see no distinction between a deposition notice to Sneed, Vine and Perry, P.C. and the prior deposition notice to an individual attorney in the firm that the Court has already quashed."

Center objected to this notice as well, repeating the previous claims of privilege. Sneed informed the Real Parties' counsel via email that "the firm will not be appearing at the deposition noticed for Thursday, February 22, 2024." In response, on February 23, 2024, the Real Parties filed a motion to compel the oral deposition of the corporate representative, repeating the same argument and authorities regarding privilege as their January 18, 2024 motion to compel. The trial court held a hearing on the motions to compel on March 7, 2024. Regional Center argued that the Real Parties were purposely seeking case-specific details about the Foreclosure Action that are protected by the work-product privilege. The Real Parties responded that they are entitled to this information and that Sanders is the only person who can provide them with answers. On April 18, 2024, the trial court granted the Real Parties' motion to compel and allowed the deposition of the corporate representative to proceed.[6] The order did not provide for any limitations, such as a limited scope or entry of a protective order. The Real Parties then served Sneed, Vine and Perry, P.C. with a new deposition notice for their corporate representative, which included an expanded list of thirty-four topics, including:

- All actions taken to contest the foreclosure
- Post foreclosure action to set aside foreclosure
- First knowledge of a potential default on the senior loan
- First knowledge of default on the guaranteed debt
- First knowledge of posting for foreclosure
- Action upon learning of foreclosure but before filing the application for temporary restraining order
- Negotiations for forbearance agreement

---

[6] The trial court judge who issued the April 18, 2024 Order granting the Real Parties' motion to compel was not the same judge who issued the November 9, 2023 order granting in part Sneed's motion to quash.

6

This petition for writ of mandamus followed. Sneed also filed an emergency motion for temporary stay of trial court proceedings, which we granted.

**STANDARD OF REVIEW**

The Texas Rules of Civil Procedure define the general scope of discovery as any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is "reasonably calculated to lead to the discovery of admissible evidence." Tex. R. Civ. P. 192.3(a). Trial courts generally have discretion to determine the scope of discovery. *In re National Lloyds Ins. Co.*, 532 S.W.3d 794, 802 (Tex. 2017) (orig. proceeding). However, a trial court abuses its discretion if it compels production beyond the rules of procedure, and mandamus is the proper remedy. *See In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). Under the Texas Rules of Civil Procedure, the scope of discovery extends to "any matter that is not privileged and is relevant to the subject matter of the pending action." *See In re National Lloyds Ins. Co.*, 532 S.W.3d at 802–03 (quoting Tex. R. Civ. P. 192.3). Mandamus relief is appropriate when a trial court compels production of information that is either relevant but privileged or irrelevant. *Id.* (citing *In re National Lloyds Ins. Co.*, 507 S.W.3d 219, 224–25 (Tex. 2016) (granting mandamus relief when trial court ordered discovery of irrelevant information)); *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 256 (Tex. 2005) (orig. proceeding) (granting mandamus relief when trial court ordered discovery of privileged information)). Because Sneed would lack an adequate remedy by appeal if it were forced to disclose privileged work-product or attorney-client communications under the trial court's April 18, 2024 Order, we address below whether the trial court abused its discretion by granting the Real Parties' motion to compel the corporate

7

representative deposition. *See In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding) ("If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist.").

## ANALYSIS

Sneed argues that the trial court abused its discretion by allowing the depositions of the corporate representative of Sneed, Vine and Perry, P.C. (i.e., Sanders) because the proposed questioning would require the disclosure of privileged work product and attorney-client communications.

Under Texas Rule of Civil Procedure 192.5, work product is defined as:

(1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or

(2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents.

Tex. R. Civ. P. 192.5(a). Rule 192.5 distinguishes between core work product and non-core product. *Id.* R. 192.5(b). Core work product is defined as the work product of an attorney, or his representative, that contains the attorney's mental impressions, opinions, conclusions, or legal theories. *Id.* R. 192.5(b)(1). Core work product is not discoverable. *See In re Bexar Cnty. Crim. Dist. Atty's Off.*, 224 S.W.3d 182, 178–88 (Tex. 2007) (citing Tex. R. Civ. P. 192.5(b)(1)). On the other hand, work product that does not fall within the "core work product" category (non-core work product) may be discoverable, but "only upon a showing that the party seeking

8

discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means." Tex. R. Civ. P. 192.5(b)(2). If a court orders the discovery of non-core work product pursuant to Rule 192.5(b)(2), the court "must—insofar as possible—protect against disclosure of the mental impressions, opinions, conclusions, or legal theories not otherwise discoverable." *Id.* R. 192.5(b)(4). The party seeking the work product privilege has the burden of proof. *See generally In re E.I. DuPont de Nemours & Co.,* 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding). This requires that the party make a prima facie showing of privilege, which requires only the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* at 223 (quoting *Texas Tech Univ. Health Scis. Ctr. v. Apodaca*, 876 S.W.2d 402, 407 (Tex. App.—El Paso 1994, writ denied)). In the work product context, this means the prima facie case must show the discovery sought is work product created in anticipation of litigation or for trial. *See* Tex. R. Civ. P. 192.5(a). Work product privilege "continues indefinitely beyond the litigation for which the materials were originally prepared." *In re Bexar Cnty.*, 224 S.W.3d at 186; *see also In re Baptist Hosps. of Se. Tex.,* 172 S.W.3d 136, 144 (Tex. App.—Beaumont 2005, orig. proceeding) (providing that "work product privilege is of continuing duration and not applicable solely to the lawsuit in which it arises").

To determine whether Sneed met its burden of proof to support its claim of work product privilege, we must first determine whether it produced "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 223. To support its claims of work-product privilege, Sneed submitted an affidavit of Wayne Sanders. The affidavit stated, and the Real Parties do not dispute, that Sanders served as litigation counsel in the Foreclosure Action. The affidavit further

9

states that Sanders represented Regional Center at all stages of litigation and that any and all knowledge he has regarding facts relevant to the subject matter of the Foreclosure Action was acquired solely as Regional Center's litigation counsel.

The Real Parties argue that Zou testified at her deposition that she specifically retained Sanders as litigation counsel to stay the foreclosure. She testified that she read over the petition before it was filed and included an unsworn declaration to attach to the petition. She also testified that, after the trial court denied the request for injunction, she approved the emergency stay to this Court. The Real Parties argue that, because Zou testified that no one other than Sanders "would be able to explain what happened with respect to the gap in time between [the] order from the Third Court of Appeals and the foreclosure actually having already occurred," that Sanders's testimony on this issue is required and not privileged. They further argue that in the event a deposition "calls for privileged information, the deponent's counsel can object." [7]

We conclude that Sanders's affidavit is sufficient to show that the requested discovery implicates work product because the affidavit "produce[d] the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *See In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 223. As both Sanders's affidavit and Zou's deposition testimony show, Sanders was retained by Zou and Texas Investment Regional Center, LLC as litigation counsel to provide advice to Zou as to how to proceed in the Foreclosure Action. The questions asking Sanders "why" he took a specific action seek to wade into his

---

[7] To the extent the Real Parties rely on *West v. Solito*, 563 S.W.2d 240, 246 (Tex. 1978) (orig. proceeding), to support the trial court's order, the trial court did not include the procedures set out in *West*.

10

thought processes and legal strategy. Thus, the affidavit makes clear that the listed deposition topics would require disclosure of material prepared or mental impressions developed in anticipation of litigation. *See* Tex. R. Civ. P. 192.5(a). In addition, we note that Sanders is not only the attorney of record in the Foreclosure Action, but also in the underlying case. Compelling an attorney of record involved in the litigation of the case to testify concerning the suit's subject matter generally implicates work product concerns. *See In re Baptist Hosps. of Se. Tex.*, 172 S.W.3d at 145–46 (explaining that "compelling a deposition of the opposing party's attorney of record concerning the subject matter of the litigation is inappropriate under most circumstances" and that "calling opposing counsel of record as a witness seriously disrupts the counsel's functioning as an advocate and may create a false impression that the advocate was improperly involved in the underlying issues in the litigation"). Every attorney of record in a case being litigated, or in a case where litigation is anticipated, obtains "factual, relevant information." *See id.* at 143. "Performing the function of a lawyer does not preclude a litigation attorney from observing, investigating, monitoring, and evaluating the facts surrounding the matter in controversy." *Id.* The evidence does not show that Sanders was a "fact witness divorced from the litigation" in the Foreclosure Action. *Id.* Instead, his work was reasonably related to and in furtherance of the prosecution of Zou's attempt to prevent the foreclosure and also related to defending against the Real Parties' causes of action in the underlying suit. As previously stated, the topics in the corporate representative's deposition notice would require Sanders to divulge communications between him and his clients regarding the foreclosure that would be protected by either work-product or attorney-client privilege. Accordingly, we conclude that Sneed's evidence is sufficient to support a rational inference that the requested

11

information implicates privileged, core work product and thus the trial court abused its discretion by granting the Real Parties' motion to compel.

However, even where a party has shown a substantial need to depose an attorney of record in the litigation, the attorney's oral deposition should be ordered only as a last resort and the area of questions permitted should be specified and a protective order entered, to protect against the disclosure of core work product and other privileged information. *Id.* (citing Tex. R. Civ. P. 192.5(b)(4)). Generally, even when discovery of non-core work product is permitted because of substantial need and undue hardship under Rule 192.5(b)(2), a trial court should not order a deposition of an attorney of record on the subject matter of the litigation without requiring a showing that less intrusive discovery methods are unavailable to obtain the information sought. *See generally In re ExxonMobil Corp.*, 97 S.W.3d 353, 358 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (providing that "factual information may be obtained by means other than requiring production of privileged documents"); *In re Bexar Cnty.*, 224 S.W.3d at 189 (providing that, in malicious prosecution case against district attorney, even assuming testimony sought from district attorney was non-core work product, plaintiff's burden of showing essential element of his claim was insufficient to constitute "substantial need"). The Real Parties claim that they cannot obtain their desired information from anywhere else but Sanders himself, but this is unpersuasive because the Real Parties already took the deposition of Zou, who was heavily involved in the Foreclosure Action, and because they had yet to depose other witnesses. Zou's statement during her deposition that Sanders would be the only other person to know why the foreclosure was not stopped in time, by itself, is insufficient to show undue hardship in obtaining that information. As Sneed correctly points out, Zou did not testify at her deposition that her attorney would be the only person with the information sought

regarding the delay between our stay order and the actual foreclosure. Instead, Zou's testimony was that she did not know which persons may have had knowledge of what happened, other than her attorney. The Real Parties appear to use Zou's lack of knowledge as proof of the Real Parties' alleged inability to obtain the information sought rather than determining for themselves who did have knowledge. Thus, this singular question and answer does not justify the litany of questions directed at Sanders including the DWQs and corporate representative deposition topics. Accordingly, even assuming Sanders's sought-after deposition testimony constitutes non-core work product, the Real Parties have not shown substantial need and undue hardship required to obtain it.

## CONCLUSION

We hold that the trial court abused its discretion by granting the Real Parties' motions to compel the deposition of the Sneed, Vine and Perry, P.C. corporate representative and compelling the deposition on topics related to the Foreclosure Action. Accordingly, we conditionally grant Sneed's petition for writ of mandamus and direct the trial court to vacate its April 18, 2024 Order granting the Real Parties' motion to compel the deposition of the corporate representative of Sneed, Vine and Perry, P.C. We are confident that the trial court will comply, and our writ will issue only if it does not. All pending motions are dismissed as moot. We lift our previous order staying all trial court proceedings.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Filed: August 29, 2024

13