Allan R. KING, Donald E. Holley, and F. Edward Barker, Petitioner,

v.

Philip H. GRAHAM and Thomas Michael Wren, Respondent.

No. 01–0171.

Supreme Court of Texas.

Nov. 7, 2003.

Rehearing Denied Feb. 27, 2004.

---

11. Tex.R.App. P. 59.1.

12. Tex.R.App. P. 56.1(b)(2).

Deborah R. Sundermann, Constance A. Luedicke, Corpus Christi, Jeffrey D. Small, Law Office of Jeff Small, San Antonio, for petitioners.

Darby Riley, Thomas H. Crofts Jr., Crofts & Callaway, P.C., San Antonio, for respondents.

Jo Ellen Hewins, Canales & Simonson, Douglas Mann, Law Office of Douglas Mann, Corpus Christi, for other interested parties.

PER CURIAM.

In *Browning–Ferris Industries, Inc. v. Lieck,* we held that a person cannot be liable for malicious prosecution if "the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, *unless* the person provides information which he knows is false."[1] Thus, proof that a complainant has knowingly furnished false information is *necessary* for liability when the decision to prosecute is within another's discretion. But such proof is not *sufficient. Lieck* also requires proof that the false information "cause[d] a criminal prosecution."[2] In other words, there must be proof that the prosecutor acted based on the false information and that but for such false information the decision would not have been made.[3] Because a divided court of appeals in the present case, sitting en banc, imposed liability without such proof,[4] we reverse and render judgment that the plaintiffs take nothing.

In the late spring of 1991, Allan R. King, Donald E. Holley, F. Edward Barker, Bonner Dorsey, and perhaps also Hugo F. Berlanga, decided to go into business operating under the name Safari Specialties, Inc., offering full-service hunts of exotic animals and whitetail deer in the Texas Hill Country. SSI contracted with Phillip H. Graham and Thomas Michael Wren to act as guides for the hunters that SSI planned to book. Under the agreement, effective through February 1, 1992, Graham and Wren were to arrange with landowners for "trespass rights" for hunting sites and to "reserve" a sufficient number of animals to be "harvested." SSI sent Graham a $12,050 deposit on the agreement and later gave Graham and Wren $7,500 more to reserve twenty-five bucks.

As deer season approached without SSI's having booked a single hunt, Graham and Wren became concerned that no hunters would materialize. They repeatedly called SSI for information but learned nothing encouraging. For its part, SSI was growing worried that Graham and Wren had not reserved animals for the hunts that it still hoped to book. King called Graham, who told him to call Wren, but Wren had gone hunting and never returned King's call. King and Holley called two landowners with whom they thought Graham and Wren had arranged hunts, but the landowners reported that they had not been contacted by Graham and Wren. Convinced that Graham and Wren had made off with SSI's deposits, King called the Kerr County Sheriff's De-

---

1. 881 S.W.2d 288, 293 (Tex.1994) (emphasis added).

2. *Id.* at 292; *see* RESTATEMENT (SECOND) OF TORTS § 653 cmt. g (1977).

3. *Lieck,* 881 S.W.2d at 294; RESTATEMENT (SECOND) OF TORTS § 653 cmt. g.

4. 47 S.W.3d 595.

partment and spoke to investigator Brad Alford, complaining that Graham and Wren had committed theft and criminal fraud. Alford asked King to explain the situation in writing, and King sent him a three-page letter dated November 6, 1991. The letter to Alford specifically mentioned the agreement between SSI, Wren, and Graham and stated that a copy of the agreement was attached as Exhibit "A."

Alford, an experienced criminal investigator who was also knowledgeable about hunting, subpoenaed Graham's and Wren's bank records and explored King's complaints. Concluding that a crime may have been committed, Alford obtained the Sheriff's Department's consent to report his findings to Ronald Sutton, one of two district attorneys for Kerr County. Sutton, who had been district attorney for fourteen years, decided that the matter should be presented to the grand jury on January 6, 1992. Without hearing from Graham and Wren, the grand jury indicted them for felony theft. Several months later, after conferring with legal counsel for Graham and Wren, Sutton decided to dismiss the indictment. Although Sutton was aware of the agreement between SSI, Wren, and Graham, he had overlooked (by his own admission) that at the time the indictment was returned, almost a month remained on the term of the agreement in which Graham and Wren could still have performed. Thus, he concluded that the indictment was premature. He also had concluded by then that the matter was civil in nature rather than criminal.

Graham and Wren promptly sued King, Holley, Barker, Dorsey, and Berlanga for malicious prosecution. Graham and Wren asserted, among other things, that the de-

fendants had instigated the criminal case using the prestige of Dorsey and Berlanga, respectively a justice of the court of appeals and a state representative. The trial court directed a verdict for Dorsey and Berlanga but rendered judgment on a verdict against King, Holley, and Barker. These defendants and the plaintiffs appealed.

A divided court of appeals, sitting en banc, affirmed the judgment of the trial court in all respects.[5] The court held that the judgment for malicious prosecution was supported by evidence that the defendants had given Sutton false information and omitted material information.[6] The dissent argued that the judgment could not stand because there was no evidence that Sutton would have decided not to prosecute but for the allegedly false information the defendants provided.[7]

The trial court correctly instructed the jury that

> [a] person procures a criminal prosecution if his action were enough to cause the prosecution, and but for his actions the prosecution would not have occurred. A person does not procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, unless the person provides information which he knows is false.[8]

Graham and Wren contend that King provided Alford and Sutton with the following information that he knew was false: that SSI had booked several hunters, that Graham and Wren had not reserved any animals, that Berlanga was an SSI shareholder, and that Safari Specialties, Inc.

---

**5.** 47 S.W.3d 595.

**6.** *Id.* at 604–06.

**7.** *Id.* at 613–14 (Green, J., dissenting).

**8.** *See Lieck,* 881 S.W.2d at 293 (emphasis added).

was the corporation's legal name. For purposes of our analysis, we accept this contention as true. But it does not assist Graham and Wren.

As we stated in *Lieck:*

[A] person cannot procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another person, a law enforcement official or the grand jury.... An exception ... occurs when a person provides information which he knows is false to another *to cause a criminal prosecution.*[9]

■ Similarly, the Restatement (Second) of Torts § 653, comment g, which we cited approvingly in *Lieck,* makes clear that:

In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him *upon which the official acted* was known to be false.[10]

We explained in *Lieck* that this comment:

states that an intelligent exercise of discretion is impossible when a prosecutor is provided false information. This is not literally true in all instances. Prosecutors may well suspect that information they receive is unreliable and decide not to initiate criminal proceedings. What is true is that a person who provides false information cannot complain *if a prosecutor acts on it;* he cannot be heard to contend that the prosecutor

should have known better. Such a person has procured the resulting prosecution, regardless of the actions of the prosecutor, and the causation element for malicious prosecution is satisfied.[11]

Thus, these authorities demonstrate that a person who knowingly provides false information to the grand jury or a law enforcement official who has the discretion to decide whether to prosecute a criminal violation cannot be said to have caused the prosecution if the information was immaterial to the decision to prosecute. If the decision to prosecute would have been made with or without the false information, the complainant did not cause the prosecution by supplying false information. Therefore, to recover for malicious prosecution when the decision to prosecute is within another's discretion, the plaintiff has the burden of proving that that decision would not have been made but for the false information supplied by the defendant.

■ In the present case, as the dissenting justices in the court of appeals correctly stated, no such evidence exists. Graham and Wren offered no evidence whatever—as by opinion from Sutton, for example—that the decision to prosecute was based on any information supplied by King that Graham and Wren assert was false. Sutton, who had the discretion not to present the matter to the grand jury, testified that he did not know Dorsey or Berlanga, that he did not know Dorsey was a judge, and that while he knew Berlanga was a state representative, his decision was not influenced by that fact. Sutton was not asked about the materiality of

---

9. *Id.* at 292 (emphasis added).

10. RESTATEMENT (SECOND) OF TORTS § 653 cmt. g (quoted in *Lieck,* 881 S.W.2d at 294) (emphasis added).

11. *Lieck,* 881 S.W.2d at 294 (emphasis added).

any of the other false or misleading statements King allegedly made. And Sutton was aware of the agreement between SSI, Graham, and Wren, he had simply overlooked that its term had not yet expired at the time the grand jury returned an indictment. Alford testified only that knowing King's statements were false could possibly have influenced his investigation. He did not testify that he would have recommended against prosecution or that Sutton would have followed that recommendation.

The court of appeals did not address the dissenting justices' argument but simply held that evidence that King's statements were false or misleading was sufficient to support the trial court's judgment. Graham and Wren argue in essence that causation can be inferred from the falsity of King's statements. While such an inference might be drawn in a case in which the only information the official relied on in deciding to prosecute was false, that is not the situation in this case. Sutton testified that the determinative issue for him was whether Graham and Wren had accepted money from the defendants without being ready, willing, and able to perform their agreement to provide hunting guide services. He could reasonably have decided that they were not, even if he had known that King's information was false in various particulars. Nothing in the record shows that the false information was material to the decision to prosecute Graham and Wren.

Graham and Wren also cite in support of the judgment King's failure to provide Alford and Sutton with a copy of SSI's price sheet showing the very high prices it intended to charge and his failure to disclose that Graham and Wren had made numerous calls to SSI. But Sutton testified that the omission of SSI's price sheet was im-

material to his decision because it made no difference to him how high SSI's prices were. Sutton testified that he would have wanted to investigate further Graham's and Wren's calls to SSI. He, however, neither stated nor intimated that he would have refused to refer the case to the grand jury had he known that calls had been made. Thus, we need not decide whether the omission of that information could form the basis for a malicious prosecution claim because the evidence demonstrates that that omission did not cause Graham and Wren to be prosecuted.

Accordingly, the trial court's judgment for malicious prosecution cannot stand. We grant the defendants' petition for review and, without hearing oral argument,[12] reverse the judgment of the court of appeals and render judgment that Graham and Wren take nothing.

Justice JEFFERSON did not participate in the decision.