IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0613
════════════
 
In re Bexar County Criminal 
District Attorney’s Office, Relator
 
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
 
Argued September 
28, 2006
 
 
Justice Willett delivered the opinion of the Court, in 
which Justice Hecht, Justice O’Neill, 
Justice Wainwright, 
and Justice Brister joined.
 
Justice Willett delivered a concurring opinion.
 
Justice Johnson delivered a dissenting opinion, in 
which Chief Justice Jefferson and Justice Medina joined.
 
Justice Green did not participate in the 
decision.
 
 
This case 
presents an issue of first impression: whether the work-product privilege 
protects prosecutors from testifying in a malicious prosecution suit when they have already released the prosecution file. Relator Bexar County Criminal District Attorney’s Office 
(“DA” or “DA’s Office”) provided its prosecution file to real party in interest 
David Crudup, who had sued relator Cynthia Blank for malicious prosecution. Crudup subpoenaed DA representatives to testify, but the 
trial court granted the DA’s Motion to Quash and For Protective Order. The court 
of appeals disagreed and ordered the trial court to withdraw its order granting 
the motion.[1] The DA’s Office and Blank now seek 
mandamus relief in this Court, and given the record and circumstances presented, 
we conditionally grant it.
I. Factual and Procedural Background
David Crudup and his wife were feuding neighbors of Cynthia Blank 
and her teenage son Travis. The Crudups and the Blanks 
complained repeatedly about each other to the Bexar County Sheriff’s Office 
regarding such incivilities as barking dogs, obscenities yelled, cut cable 
lines, strewn grass clippings, trash left in a yard, rocks thrown at a fence, 
water sprayed on cars and grass, and a sprinkler that ran too long and created a 
puddle. Each time, the responding officer would talk to both sides and prepare 
an incident report.
On one 
occasion, Travis Blank alleged that Crudup threatened 
to kill him. Following this complaint, the DA charged Crudup with making terroristic 
threats.[2] During their investigation, members of 
the DA’s Office interviewed Blank on several occasions. The DA’s prosecution 
file contains sheriff’s department reports, typed internal memos, letters 
written by Blank, and handwritten notes from interviews and telephone calls 
prepared by the DA’s office. One set of notes detailed a series of calls between 
Blank and Assistant DA Robert McCabe. The file indicates that Blank refused to 
testify or to allow Travis to testify at trial, despite McCabe’s warnings that 
the DA’s Office would drop the charges against Crudup 
if they did not testify.
The DA’s 
Office indeed dropped the charges, and Crudup sued the 
Blanks for malicious prosecution. The DA’s Office complied with a subpoena duces tecum and 
turned over its prosecution file to Crudup for use in 
the civil case. Crudup subpoenaed McCabe, another 
assistant DA, and a DA investigator to testify at trial. The DA’s Office and the 
three subpoenaed individuals filed a Motion to Quash and For Protective Order, 
arguing that the work-product privilege precluded the testimony Crudup sought. Crudup’s response 
attached no evidentiary support other than the previously produced prosecution 
file. Crudup insisted the DA testimony was not work 
product, and in any event the DA had waived any privilege claim by disclosing 
the prosecution file. The trial court conducted a brief non-evidentiary hearing 
and granted the DA’s motion from the bench. At the hearing, Crudup’s counsel complained, without elaboration, that the 
court had “damaged my case” and “severely limited and handicapped my case.” 
Crudup filed a motion for reconsideration, attaching a 
transcript of the hearing and arguing that he needed the testimony from the DA 
personnel “to fully develop” his case and to prove the elements of malicious 
prosecution. The motion also attached notes from the prosecution file written by 
McCabe, and purporting to “state the reasons” and “describe the reason” the 
criminal case was dismissed. The trial court entered a written order again 
granting the DA’s motion and effectively denying the motion for 
reconsideration.
The court of 
appeals granted Crudup mandamus relief and directed 
the trial court to withdraw its order. The court of appeals concluded that under 
King v. Graham[3] Crudup must 
prove that Blank’s provision of false information was the determining factor in 
the DA’s decision to bring the criminal prosecution, and that “[u]nder these circumstances the work-product privilege does not 
operate as a blanket privilege covering all decisions made by the DA’s 
office.”[4] The DA now seeks mandamus relief in this 
Court.
II. Discussion
A. Standard of Review
We grant 
mandamus relief when the trial court has abused its discretion and a party has 
no adequate appellate remedy.[5] As to the first prong, a lower court has 
no discretion in determining what the law is, even when the law is unsettled.[6] As to the second, we have repeatedly held 
that appeal is inadequate when a court erroneously orders disclosure of 
privileged information.[7]
B. The King Decision Does Not Mandate DA 
Testimony
Causation is 
an indispensable element of this malicious prosecution case. As we explained in 
King, “to recover for malicious prosecution when the decision to 
prosecute is within another’s discretion, the plaintiff has the burden of 
proving that that decision would not have been made but for the false 
information supplied by the defendant.”[8] So Crudup must 
prove not only that the Blanks furnished false information, but also that this 
false information caused Crudup to be prosecuted.[9] 
In 
King, Kerr 
County district attorney 
Sutton testified in the malicious prosecution case brought by plaintiffs Graham 
and Wren.[10] In rendering judgment for defendants, we 
wrote, “Graham and Wren offered no evidence whatever—as by opinion from 
Sutton, for example—that the decision to prosecute was based on any 
information supplied by King that Graham and Wren assert was false.”[11] The King decision and our review 
of the King record do not reveal whether Sutton testified voluntarily or 
pursuant to a subpoena.
Crudup argues that “[a] necessary element for a malicious 
prosecution is the testimony of the District Attorney’s office,” and insists 
that this Court “has ruled that the testimony of the District Attorney’s office 
is necessary to prove an element of malicious prosecution.” This is assuredly 
wrong; nothing in King suggests that plaintiffs must provide direct 
evidence of causation or that prosecutors can be subpoenaed to provide live 
testimony regarding causation or anything else. In King, the district 
attorney did testify, and as this Court weighed but-for causation in that case, 
we noted that his testimony nowhere opined “that the decision to prosecute was 
based on any information supplied by [the defendant] that [plaintiffs] assert 
was false.”[12] We summarized what the district attorney 
did and did not say and mentioned his testimony as merely one way causation 
could have been proved in that case. Our reference to the district attorney’s 
testimony in King, however, did not announce a blanket privilege waiver 
or authorize plaintiffs to subpoena prosecutors to testify whenever plaintiffs 
wish to bolster the causation element of their malicious prosecution 
lawsuit.
C. Crudup Cannot Overcome the DA’s 
Testimonial Privilege
The United 
States Supreme Court first recognized the work-product doctrine 60 years ago in 
Hickman v. Taylor,[13] and our state discovery rules protect 
those materials prepared by or at the request of an attorney in anticipation of 
litigation.[14] As we have explained, “The primary 
purpose of the work product rule is to shelter the mental processes, 
conclusions, and legal theories of the attorney, providing a privileged area 
within which the lawyer can analyze and prepare his or her case.”[15] The privilege continues indefinitely 
beyond the litigation for which the materials were originally prepared.[16] Moreover, the privilege covers more than 
just documents: it extends to an attorney’s mental impressions, opinions, 
conclusions, and legal theories,[17] as well as the selection and ordering of 
documents.[18] The work product privilege is broader 
than the attorney-client privilege[19] because it includes all communications 
made in preparation for trial, including an attorney’s interviews with parties 
and non-party witnesses.[20]
In the 
pending case, all of the DA’s Office’s work in connection with the criminal 
proceeding against Crudup, and relevant to the 
decision to bring criminal charges against him, constitutes work product, namely 
“material prepared or mental impressions developed in anticipation of litigation 
or for trial” or communications “made in anticipation of litigation or for trial 
. . . among a party’s representatives” under Rule 192.5(a). The totality of the 
DA’s work on the Crudup matter, as evidenced by the 
prosecution file, consisted of the preparation of a criminal charge against 
Crudup and the criminal litigation that followed. The 
trial court record indicates that Crudup was not 
interested in eliciting general factual testimony from DA witnesses regarding 
how the DA’s Office receives, processes, and investigates criminal complaints. 
Crudup only subpoenaed DA employees who had been 
directly involved with his criminal case to testify in the civil case. He 
informed the district court, in his response to the Motion to Quash and For 
Protective Order, that he was interested in their testimony because “[t]he DA’s 
office had numerous conversations with Defendant Cindy and because of these 
conversations they are fact witnesses to the statements made by Defendant 
Cindy.” He stated in his motion for reconsideration that he needed the testimony 
in order to “present evidence of the conduct of the Defendants before the 
criminal case was initiated” and also “to present evidence of the conduct of the 
Defendants during the course of the criminal proceedings, especially as to the 
reason of the dismissal of the criminal case.” In his briefing to this Court, he 
stresses that without DA testimony, he cannot prove the specific elements of 
malicious prosecution. For purposes of his civil case, conversations made in the 
course of the criminal investigation, information learned during that 
investigation, and the DA’s decision to drop the case all constitute work 
product as defined above, and while producing the prosecution file 
unquestionably waived protection of the documents themselves, that selective 
disclosure does not oblige DA staff to provide deposition and trial testimony 
interpreting, explaining, or otherwise elaborating on matters contained in the 
file. The dissent notes that Crudup may well want to 
quiz DA staff about various matters unrelated to the specifics of the 
prosecution against him: “testimony as to general procedures such as procedures 
of the DA’s office for intake of criminal complaints, processing of those 
complaints, whether investigation is made into the facts of cases before 
criminal proceedings are instituted, and whether contacts are typically made 
with complaining witnesses before criminal proceedings are begun, during the 
proceedings, or after the proceedings are completed.” ___ 
S.W.3d ___, ___. Crudup, however, has never 
expressed the slightest interest in such general matters, which might well be 
fair game; the record and his briefs to this Court show him focused solely on 
eliciting DA testimony regarding the specific events surrounding his criminal 
case and insisting that without such case-specific details, “he will not be able 
to prove every element of malicious prosecution.”
Rule 
192.5(b)(1) distinguishes everyday work product from “core work product” and 
makes clear that the latter—defined as “the attorney’s or the attorney’s 
representative’s mental impressions, opinions, conclusions, or legal 
theories”—is inviolate and flatly “not discoverable,” subject to narrow 
exceptions that are inapplicable here.[21] Core work product is sacrosanct and its 
protection impermeable. Assuming arguendo that 
the testimony Crudup seeks is non-core work product, 
which seems doubtful, Crudup still bears a heavy 
burden: he must show that he “has substantial need” for the testimony in the 
preparation of his case and that he “is unable without undue hardship to obtain 
the substantial equivalent of the material by other means.”[22]
The court of 
appeals said it granted mandamus relief because “the DA’s office has failed to 
meet its burden of showing any basis to quash the subpoenas.”[23] This misses the mark. In the record, 
briefing, and oral argument, Crudup continued to 
demonstrate his intention to interrogate the DAs about case-specific details. 
Such testimony would unquestionably require the disclosure of DA work product, 
which, at a minimum, places the burden on Crudup to 
show a “substantial need” for the testimony and the inability to obtain its 
substantial equivalent by other means without “undue hardship.”
Addressing 
the first prong, “substantial need,” Crudup contends 
that he “will not be able to prove an element of his case” (namely, causation) 
without testimony from the prosecutors. To be sure, granting Crudup access to live DA testimony might improve his chances 
in court, but improving a civil litigant’s odds of winning is not enough. 
Substantial need is not merely substantial desire. Prosecutors could win more 
convictions absent the Fifth Amendment, or the priest-penitent privilege, or the 
marital privilege, but we safeguard these privileges and others because they 
advance a greater societal good. Like every litigant, Crudup wants to strengthen his lawsuit, understandably so, 
but that cannot trump a settled privilege and justify a wide-ranging excavation 
of prosecutorial decision-making.
The second 
prong is inability to obtain the substantial equivalent of the requested 
material. As stated above, Crudup cannot win his 
malicious prosecution suit without showing that false information supplied by 
the Blanks to the DA’s Office caused the DA to prosecute.[24] The DA’s Office, however, has already 
provided Crudup with the substantial equivalent of 
testimony: it has, pursuant to a subpoena duces tecum, turned 
over its entire prosecution file, which contains notes related to the 
investigation, sheriff’s department complaint reports, Travis Blank’s affidavit 
to the sheriff’s department detailing Crudup’s alleged 
threat, and McCabe’s log of conversations with Cynthia Blank that ultimately 
prompted him to dismiss the criminal charges. Many if not all of these documents 
might come into evidence either through a non-hearsay use or as an exception to 
hearsay.[25] Any false statements made by the Blanks 
to the DA, for example, would not constitute hearsay if offered for their effect 
on the listener rather than for the truth of the matter asserted.[26] And Crudup has 
already taken a deposition on written questions of the DA’s custodian of records 
in order to establish that the prosecution file contains records of a regularly 
conducted activity under Rule 803(6). Crudup is not 
required to produce live testimony from a prosecutor, and he might well be able 
to prove his case through alternative means, including (1) circumstantial 
evidence, (2) trial testimony and pretrial discovery from the Blanks, and (3) 
expert testimony on prosecutorial decision-making and whether the file suggests 
the DA would not have charged Crudup but for the 
allegedly false information. Rule 192.5 strikes a sensible balance, recognizing 
that a lawyer’s thoughts are his own and that a party cannot invade every nook 
and cranny of a lawyer’s case preparation, particularly when the “essence” of 
what the party seeks has already been revealed to him or is readily available.[27] Indeed, while insisting he needs live 
testimony to prove Blank’s malice, Crudup’s brief 
concedes that the prosecution file contains all the evidence he needs: “The 
notes of District Attorney McCabe clearly indicate the malice of Cynthia 
Blank.”
 Understandably, 
Crudup desires live testimony to fortify his case, but 
Rule 192.5(b)(2) is not nearly so permissive. Even 
assuming the testimony sought is non-core work product, Crudup’s burden of showing causation in his malicious 
prosecution suit is insufficient to constitute “substantial need.” Nor has Crudup shown an inability to obtain the substantial 
equivalent of the testimony sought without “undue hardship.” If anything, when 
it comes to affecting Crudup’s burdens at trial, the 
DA’s disclosure of its prosecution file did more to alleviate than to 
aggravate.
D. The DA Has Not Consented to Testify by Producing the 
File
Crudup alternatively argues that the DA waived the privilege 
under Texas Rule of Evidence 511(1) and cannot resist testifying. Again, we 
disagree. Rule 511(1) provides that a person waives a privilege against 
disclosure if he “voluntarily discloses or consents to disclosure of any 
significant part of the privileged matter . . . .” Although the DA’s Office 
turned over its prosecution file without objection, which waived the 
work-product privilege as to the file’s contents, the record is devoid of any 
indication that by doing so the DA likewise enlisted its current and former 
personnel to testify in Crudup’s malicious prosecution 
suit regarding their case materials and related impressions and communications. 
The DA’s waiver here is limited, not limitless, and agreeing to produce a 
prosecution file does not in itself require the DA to produce its personnel so 
that their mental processes and related case preparation may be further probed. 

We therefore 
hold on this record, given the protected nature of what Crudup intends to elicit, that the DA’s selective disclosure 
of the prosecution file, while waiving the privilege as to the documents 
themselves, does not waive the DA’s testimonial work-product privilege regarding 
the prosecutor’s mental processes; nor did the DA’s file disclosure itself give 
rise to a “substantial need” or “undue hardship” sufficient to overcome the 
privilege that protects non-core work product.
III. Conclusion
Direct 
prosecutor testimony is not required to prove causation and malice in malicious 
prosecution suits. Nor, on this record, did the DA’s Office waive its 
work-product privilege against testifying by producing the prosecution file. 
Given the nature of what Crudup seeks and his 
inability to show both “substantial need” and “undue hardship” under Rule 
192.5(b)(2), he cannot force DA personnel to discuss 
their mental processes or other case-related communications and preparation, 
even if the subpoenaed testimony relates to documents already produced.
We 
conditionally grant the petition for writ of mandamus and direct the court of 
appeals to vacate its writ of mandamus and to reinstate the trial court order 
quashing the subpoenas and issuing a protective order.[28] The writ will issue only if the court of 
appeals fails to comply.
 
 
________________________________________
Don R. 
Willett
Justice
 
 
Opinion delivered: May 4, 
2007
 
 






[1] 179 S.W.3d 47, 51.

[2] This crime 
ranges from a Class B misdemeanor to a state jail felony depending upon the 
circumstances of the threat. See Tex. Penal Code ' 22.07.

[3] 126 S.W.3d 75 (Tex. 2003) (per curiam).

[4] 179 S.W.3d at 50.

[5] In re 
Prudential Ins. Co., 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); Walker v. Packer, 
827 S.W.2d 833, 839–40 (Tex. 1992) (orig. 
proceeding).

[6] 
Prudential, 148 S.W.3d at 135 (citing Huie v. DeShazo, 922 
S.W.2d 920, 927–28 (Tex. 1996)).

[7] In re Ford 
Motor Co., 211 S.W.3d 295, 298 (Tex. 2006) 
(per curiam) (orig. proceeding); In re Bass, 
113 S.W.3d 735, 745 (Tex. 2003) (orig. 
proceeding).

[8] 126 S.W.3d at 78.

[9] See id. 
at 76; see also Browning-Ferris Indus., Inc. v. 
Lieck, 881 S.W.2d 288, 292–93 (Tex. 1994) (citing Restatement (Second) of Torts 
' 653 cmt. g 
(1977)).

[10] 126 S.W.3d at 78–79.

[11] Id. at 78 
(emphasis added).

[12] Id.

[13] 329 U.S. 495, 509 
(1947).

[14] Tex. R. Civ. P. 192.5(a)(1).

[15] 
Owens-Corning Fiberglas Corp. v. Caldwell, 818 S.W.2d 749, 750 
(Tex. 1991) (orig. proceeding) (citing Axelson, Inc. v. McIlhany, 798 S.W.2d 550, 554 (Tex. 
1990)).

[16] Id. at 
751–52.

[17] Tex. R. Civ. P. 192.5(b)(1).

[18] Nat’l 
Union Fire Ins. Co. v. Valdez, 863 S.W.2d 458, 460 (Tex. 1993) (orig. proceeding) (citing Hickman, 329 
U.S. at 511).

[19] See 
Tex. R. Evid. 
503.

[20] See 
Tex. R. Civ. P. 192.5(a)(1)–(2); Hickman, 329 U.S. at 
512–13.

[21] Rule 192.5(c) 
provides exceptions to the work-product privilege for: 
(1) information discoverable under Rule 192.3 concerning 
experts, trial witnesses, witness statements, and contentions; (2) trial 
exhibits ordered disclosed under Rule 166 or Rule 190.4; (3) the name, address, 
and telephone number of any potential party or any person with knowledge of 
relevant facts; (4) any photograph or electronic image of underlying facts 
(e.g., a photograph of the accident scene) or a photograph or electronic image 
of any sort that a party intends to offer into evidence; and (5) any work 
product created under circumstances within an exception to the attorney-client 
privilege in Rule 503(d) of the Rules of Evidence.
A “witness statement” under Rule 192.3(h) includes 
signed witness statements and recorded statements, but does not include 
“[n]otes taken during a conversation or interview with 
a witness.”

[22] Tex. R. Civ. P. 192.5(b)(2).

[23] 179 S.W.3d at 51.

[24] See 
King, 126 S.W.3d at 78.

[25] See 
Tex. R. Evid. 801(e)(2) (admission by party-opponent); id. 803(6) (records of regularly conducted activity); id. 
803(8)(A), (C) (public records and 
reports).

[26] See 
id. 801(d).

[27] See 
Hickman, 329 U.S. at 509.

[28] See 
Tex. R. App. P. 
52.8(c).