

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| GARY GONZALEZ, | | No. 08-13-00326-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 171st District Court |
| | § | |
| IONE GRIMM, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 2008-3874) |
| | § | |

**O P I N I O N**

This is an appeal from a directed verdict. Gary Gonzalez sued Ione Grimm for malicious prosecution. At the time of events in question, Grimm was a middle school principal and Gonzalez was the father of two students at the school. The malicious prosecution claim arose out of Gonzalez' arrest on a charge of criminal harassment, which was later dismissed at the request of the State's prosecutor. After the charge was dismissed, Gonzalez sued Grimm who initially prevailed on a motion for summary judgment, premised on an affirmative defense under the Education Code. That summary judgment was reversed on appeal. *Gonzalez v. Grimm*, 353 S.W.3d 270 (Tex.App.--El Paso 2011, no pet.). Following remand, the case proceeded to trial and at the conclusion of Gonzalez' case in chief, the trial court granted a directed verdict, the propriety of which is the only issue before us.

*Standard of Review*

A directed verdict is properly granted when there is "no evidence" to support a material issue in the case. *Prudential Insurance Company of America v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). A trial record contains "no evidence" when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

In reviewing a directed verdict, we examine the evidence in the light most favorable to the person suffering the adverse judgment. *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996). But evidence cannot be taken out of context in a way that makes it seem to support a material issue when in fact it never did. *City of Keller*, 168 S.W.3d at 812. Nor do we consider the evidence "in isolated bits and pieces divorced from its surroundings; it must be viewed in its proper context with other evidence." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). Evidence is legally sufficient if it rises to a level that would enable a reasonable and fair-minded jury to make the finding. *City of Keller*, 168 S.W.3d at 810. Evidence that is "so weak as to do no more than create a mere surmise or suspicion" of a fact is not legally sufficient. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006), *quoting Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). With these standards in mind, we turn to the facts presented prior to the directed verdict.

*Factual Summary*

Gonzalez' case was presented through four witnesses: Ione Grimm; Victor Araiza (the school district's police chief); Gonzalez; and his wife. The admitted exhibits included the court's file from the underlying criminal case, and the investigation file from the police. We recite only those matters from the testimony and exhibits that bear on the issues before us and the background necessary to put them in context.

Ione Grimm started with the El Paso Independent School District (EPISD) as a principal at Wiggs Middle School in 2000. Following a run-in with an EPISD board member's wife, she was transferred to an administrative position for several years. By 2004, she was assigned to Magoffin Middle School as its principal.

Her tenure at Magoffin Middle School was not without some conflict. Five sets of parents had issues with her and Grimm believed that Gonzalez led the group. By January 2006, this group of parents had filed a complaint against Grimm with the EPISD. Part of the dispute related to the PTA chapter at the school. Gonzalez also complained about an incident with his daughter. The EPISD Board ruled in Grimm's favor in February 2006.

The genesis of this lawsuit is a telephone call that occurred on March 8, 2006. Grimm contends that Gonzalez called the school and left a message for her that morning, and that the two talked later that day. Gonzalez claims he never left a message for Grimm, and that he called the school to talk to his daughter's teacher, but instead the call was routed into Grimm's office. Gonzalez and Grimm sharply dispute what was said in the conversation.

Grimm maintains the phone call started with Gonzalez requesting that the school hold his daughter back a year. Grimm did not think that was a good idea, as the daughter was passing all her classes. Gonzalez was upset with this decision and then told Grimm she was going to be

3

"real unhappy" because he had something that belonged to her and that he had gotten it from the EPISD. He explained that he had her Social Security number and then asked her "how it made me feel" and "do you know what I could do with this?" Grimm interpreted this as a threat. Gonzalez then supposedly explained that another parent had gotten Grimm's un-redacted personnel file from the EPISD through an open records request and that person had given him a copy. Gonzalez then solicited Grimm's participation in a suit against the EPISD where they both could make money. At that point, she claims to have hung up on him.

Conversely, Gonzalez denied ever talking to Grimm about holding his daughter back, as that is a decision made by a specific committee at the school. Instead, Grimm wanted to talk about his complaint to the District about her. While he agreed there was a discussion about his possession of her personnel file and Social Security number, he mentioned it only so she could pursue an action against the school district. He denied any intent to participate in such a lawsuit himself. He also denied making any threats to harm to Grimm through use of her Social Security number, including the statement "do you know what I could do with this?"

Following the phone call, Grimm consulted her husband, her personal attorney, and an EPISD Associate Superintendent, all of whom recommended that she file a report with the police. She then reported the matter to the EPISD campus police[1] who took her statement on March 14, 2006. She signed and initialed the written statement which repeated the substance of her version of the March 8 phone conversation set out above. Grimm also sent a letter to the EPISD superintendent regarding the phone call and requested that the EPISD look into the possible release of her un-redacted personnel file. On March 28, 2006 she completed a second statement for the EPISD police department. It repeated the substance of her version of the

---

[1] The EPISD police are certified peace officers in Texas. *See* TEX.EDUC.CODE ANN. § 37.081(b)(2)(West Supp. 2014)(school board may commission peace officers who "may enforce all laws, including municipal ordinances, county ordinances and state laws").

4

conversation and then concluded by stating: "I am afraid of Gary Gonzalez and I do believe that he will use any method within his power to cause me harm. I do want to prosecute Gary Gonzalez for being in possession of my identifying numbers and threatening me with using those numbers." Several EPISD officers participated in the investigation, the last being Officer Lionel Calanche. He had passed away by the time of trial. Only Victor Araiza, Chief of EPISD Police, testified at trial about the handling of the investigation. Generally, when an allegation is brought to his department, it is investigated and if the complaining witness desires prosecution, the department proceeds further. In some instances, the department might pursue prosecution even if the complaining witness wanted to drop the matter. After the investigation was completed, the investigating officers, and their supervisor, would discuss the matter and determine what charges might be appropriate and how to pursue them. In some cases, the officers might decide to immediately take a probable cause affidavit to a judge to secure an arrest. In other cases, they may refer the matter to the district attorney's office through a "non-arrest" complaint. The district attorney would then decide whether and how to proceed further.

In this particular case, based on the March 28, 2006 written statement from Grimm, the EPISD police believed that Gonzalez may have violated TEX.PEN.CODE ANN. § 32.51 (West Supp. 2014) which is entitled "Fraudulent Use or Possession of Identifying Information." [2] That

---

[2] Section 32.51 provides in pertinent part:

    (a) In this section:

        (1) 'Identifying information' means information that alone or in conjunction with other information identifies a person, including a person's:

        .    .    .

        (E) social security number or other government-issued identification number.

        .    .    .

5

charge was presented to the district attorney's office which declined to prosecute the matter. The district attorney instead asked that the EPISD police investigate the case under a possible charge of criminal harassment. TEX.PEN.CODE ANN. § 42.07.[3] Based on this direction, Officer Calanche resumed the investigation.

At the same time the EPISD police department was handling its initial investigation, Grimm was encountering more problems at work. On March 24, 2006 the new EPISD superintendent had posted an agenda item to reassign Grimm to a different school.[4] The next

---

(b) A person commits an offense if the person, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of:

   (1) identifying information of another person without the other person's consent;

   .    .    .

(c) An offense under this section is:

   (1) a state jail felony if the number of items obtained, possessed, transferred, or used is less than five.

[3] Section 42.07 titled, "Harassment" provides in pertinent part:

(a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:

   .    .    .

   (2) threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property;

   .    .    .

   (4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;

   .    .    .

(c) An offense under this section is a Class B misdemeanor, except that the offense is a Class A misdemeanor if the actor has previously been convicted under this section.

[4] In February of 2006, the district hired a new superintendent, Lorenzo Garcia. Grimm believed that the new superintendent and Gonzalez knew each other and that Gonzalez took advantage of that relationship to work against her. For instance, Grimm claims that Gonzalez had a picture of Garcia on his cell phone and would flash it and claim he had a personal relationship with Garcia that would help him get rid of Grimm.

6

day he told her it was a mistake and that he wanted more time to investigate the unauthorized release of her personal information. On May 1, 2006, she was informed that the district wanted to put her on a "growth plan" which is apparently a euphemism for a poor performance report in the EPISD system. In June 2006, the EPISD Board demoted her to an assistant principal position at Hornedo Middle School. Grimm soon thereafter filed a federal lawsuit against the EPISD claiming the demotion and growth plan constituted retaliation for her complaint about the unauthorized release of her personal information to Gonzalez. Gonzalez countered in this trial that Grimm's true motive in making the allegations against him was to set up a retaliation claim to protect her position at Magoffin Middle School.

On February 2, 2007, Grimm was contacted by Officer Calanche of the EPISD police department. Calanche explained that the district was examining "cold cases" and he was following up on the Gonzalez complaint and wanted to meet with her. Under the department's policy, an officer should check again with the complaining witness to be sure that he or she still wanted to pursue a charge, and if not, the case would likely be dropped. No new statement was taken from Grimm at the February 2007 meeting. A note in Officer Calanche's file following the meeting recites that she "will appear for court, if necessary." The file note reflects that the case was being presented to the district attorney's office.

Following their meeting, Officer Calanche executed a Complaint and a Complaint Affidavit, which along with his file was sent to the district attorney's office. The Complaint, sworn to by Officer Calanche, alleges three violations of TEX.PEN.CODE ANN. § 42.07, the criminal harassment statute. Paragraph A alleged that Gonzalez with the intent to "harass, annoy, alarm, abuse, torment, and embarrass Ione Grimm threaten Ione Grimm by telephone, in a manner likely to alarm Ione Grimm, to wit: *commit a felony* against Ione Grimm." [Emphasis

7

added].  Paragraph B alleged that, with the same intent, Gonzalez caused Grimm's phone to ring repeatedly.  Paragraph C alleged that, with the same intent, Gonzalez made repeated telephone communications in a manner to harass, annoy, alarm, abuse, torment or embarrass Grimm.

The supporting Complaint Affidavit, also sworn to by Officer Calanche, alleged that Gonzalez committed criminal harassment "by threatening by telephone in manner reasonably likely to alarm the person receiving the threat, *to inflict bodily injury* on the person or to commit a felony against the person." [Emphasis added].  The factual basis for the allegation is stated in a separate paragraph:

> Affiant [Officer Calanche] is aware of defendants conduct and constant harassments during the months of February And March of 2006 by means of EPISD Case reports 06-44288 and numerous witness statements.  On March 8, 2006 at 11:59 a.m. at 4931 Hercules, El Paso, Tx.  The Principal at Magoffin Middle School and defendant spoke via the school business telephone.  Defendant had initiated the phone contact and asked to speak to the Principal.  Defendant in a threatening manner in conversation informed the Principal of obtaining her Social Security number and alarmed the Principal by asking, 'HOW DOES THAT MAKE YOU FEEL?  YOU KNOW WHAT I CAN DO WITH IT DON'T YOU?' Defendant was able to provide the Principal with the correct SS # belonging to the Principal.  The Principal felt harassed, annoyed, alarmed, abused, tormented, and or embarrassed by defendant's comments.  Affiant does believe this to be true and correct to the best of his knowledge.

Contrary to the Complaint Affidavit, Grimm testified that she did not believe that Gonzalez ever threatened her with bodily injury, and as importantly, she never made that claim to Officer Calanche.  Chief Araiza agreed that the department's investigation file does not contain any supporting information for a threat of bodily injury, as sworn to by Officer Calanche.  Grimm denied knowing that Calanche was going to initiate charges against Gonzalez following their meeting, and she denied seeing his complaint paperwork before he filed it with the district attorney's office.

The Complaint, the Complaint Affidavit, and various witness statements were forwarded to the district attorney's office that then had the discretion to pursue or not pursue the charge. The district attorney's office did not contact Grimm during that process. On February 21, 2007, Assistant District Attorney Manny Arambula executed and filed an "Information"[5] repeating the same three paragraphs as were in Calanche's Complaint form. On March 1, 2007, a capias for Gonzalez' arrest was issued and several months later he turned himself in. The charges were later dropped based on prosecutorial discretion.

At the conclusion of Gonzalez' case, the trial court granted Grimm's motion for directed verdict and entered a final judgment in her favor. Raising three issues on appeal, Gonzalez challenges that ruling. Issue One questions whether Gonzalez was required to prove that Grimm made false statements to the police. Issue Two contends there is evidence to support the element of malice and Issue Three generally contends he presented evidence of each element of his malicious prosecution claim.

*Malicious Prosecution*

The elements of malicious prosecution are: (1) commencement of a criminal prosecution against the plaintiff; (2) the defendant's initiation or procurement of that prosecution; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) lack of probable cause to initiate or procure the prosecution; (6) malice in filing the charge; and (7) damage to the plaintiff. *Suberu,* 216 S.W.3d at 793 n.3; *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997).

---

[5] "An 'information' is a written statement filed and presented in behalf of the State by the district or county attorney, charging the defendant with an offense which may by law be so prosecuted." TEX.CODE CRIM.PROC. ANN. art. 21.20 (West 2009). "The primary pleading in a criminal action on the part of the State is the indictment or information." TEX.CODE CRIM.PROC.ANN. art. 27.01 (West 2006).

We are reminded by the Texas Supreme Court to strictly apply these elements as they reflect a delicate balance of societal values. *Browning-Ferris Industries, Inc. v. Lieck*, 881 S.W.2d 288, 291 (Tex. 1994)("Even a small departure from the exact prerequisites for liability may threaten the delicate balance between protecting against wrongful prosecution and encouraging reporting of criminal conduct."). Citizens must be encouraged and free to report possible crimes to the authorities. *Id*., *citing Sebastian v. Cheney*, 86 Tex. 497, 25 S.W. 691, 694 (1894) and RESTATEMENT (SECOND) OF TORTS ch. 29, intro. note, at 405 (1977). At the same time, the consequences of arrest and prosecution for an offense are considerable, and every citizen should be protected from a prosecution based on false claims arising from some malicious intent. *Id*.

There is no dispute below that Gonzalez was charged for an offense that was terminated in his favor. Grimm does not challenge that he suffered some damages. The relevant issues focus on whether Grimm initiated or procured the criminal charge, whether Gonzalez was innocent of the charge, whether there was probable cause to make the charge, and whether the charge was brought with malice. We find the element of initiation or procurement, which embodies a causation element, to be determinative and begin our discussion there.

A plaintiff must prove that the defendant either *initiated* or *procured* the prosecution as an element of the claim. RESTATEMENT (SECOND) OF TORTS, § 653(a)(1977). *Initiating* the action describes executing the charging instrument which goes before the magistrate, who then may issue an arrest warrant. *Id*. § 653(a) cmt.c ("Criminal proceedings are initiated by making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused."); *see also Lieck,* 881

S.W.2d at 292. ("A person initiates a criminal prosecution if he makes a formal charge to law enforcement authorities.").

A defendant can also be liable for *procuring* the prosecution. *Lieck*, 881 S.W.2d at 292. A person procures a criminal prosecution "if his actions are enough to cause the prosecution, and but for his actions the prosecution would not have occurred." *Id.* Merely aiding or cooperating with the authorities cannot "cause" a criminal prosecution. *Id.* Nor does a person "procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another person" such as law enforcement or a grand jury. *Id.* But even if the decision is ultimately left to law enforcement, when a person knowingly provides false information which causes a criminal prosecution, they have effectively procured the prosecution and may be liable. *Id.* at 292, 294 ("What is true is that a person who provides false information cannot complain if a prosecutor acts on it").[6]

The Texas Supreme Court expanded on this false information exception in *King v. Graham*, 126 S.W.3d 75 (Tex. 2003). As *King* is controlling of the outcome here, we revisit its facts. The plaintiffs in *King* were hunting guides who agreed to secure for the defendants hunting rights and reserve a certain number of animals to be hunted. *Id.* at 76. The defendants were promoters who would arrange the hunts for paying hunters. *Id.* The defendants advanced money to the plaintiffs for that purpose and then the defendants began soliciting, apparently unsuccessfully, hunters for the venture. *Id.* As hunting season approached, the defendants

---

[6] The *Lieck* court provides this instruction for the jury:

> A person procures a criminal prosecution if his actions were enough to cause the prosecution, and but for his actions the prosecution would not have occurred. A person does not procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, unless the person provides information which he knows is false. A criminal prosecution may be procured by more than one person.

*Id.* at 293.

11

believed the plaintiffs had not fulfilled their end of the deal and contacted the sheriff's office claiming the plaintiffs committed theft and criminal fraud. *Id*. at 77. The sheriff's office investigated the matter and referred it to a prosecutor, who in turn submitted the case to a grand jury which indicted the plaintiffs. *Id*.

The criminal case soon unraveled. While the defendants claimed to the authorities that they had booked several hunters, that turned out to be false. *Id*. The claim that the plaintiffs had not reserved any animals was also false. *Id*. Ultimately the district attorney dismissed the charges and the plaintiff hunting guides filed suit for malicious prosecution, prevailing against some defendants before a jury and the court of appeals. The Texas Supreme Court reversed and rendered. *Id*. at 76. While noting the false information exception from *Lieck*, the court held proving that false information was given to authorities is "necessary" but it is not "sufficient." *Id*. Instead, the plaintiff has the burden of proving that the decision to prosecute "would not have been made but for the false information supplied by the defendant." *Id*. at 78. In *King*, the prosecutor testified, but was never asked whether the specific pieces of false information which the plaintiffs had alleged influenced his decision to take the case to the grand jury. *Id*. Because the plaintiffs failed to meet this burden, the court rendered judgment in the defendants' favor.

Several years later the court discussed a malicious prosecution plaintiff's burden in *In re Bexar County Criminal Dist. Attorney's Office*, 224 S.W.3d 182 (Tex. 2007). There, a malicious prosecution plaintiff subpoenaed several assistant district attorneys to solicit testimony as to how the charging decision was made in that case. *Id*. at 184. The district attorneys sought to quash the subpoena, contending any testimony they might give would be privileged. *Id*. The court of appeals concluded that *King* necessitated the district attorney's testimony because the plaintiff had to show any false information was important to the charging decision. *Id*. at 185. The Texas

Supreme Court disagreed, noting the plaintiffs need for the testimony did not outweigh the importance of the privilege. *Id*. at 187-88. Moreover, the court suggested a malicious prosecution plaintiff might prove their case through circumstantial evidence, testimony from the defendant, or from expert testimony on prosecutorial decision-making. *Id*. at 189. The court never suggested, however, that the decision making process of the district attorney was not a necessary component of the plaintiff's case.

*Analysis*

Gonzalez had the burden to prove that Grimm either initiated or procured the criminal prosecution. The court in *Lieck* chose not to provide a jury instruction defining the term "initiate" because ordinarily that would be apparent from the formal charging instruments. 881 S.W.2d at 293. In other words, it is usually a question of law. As the record here reflects, Officer Calanche executed the Complaint and Complaint affidavit, and the district attorney's office executed the Information which led to the capias. The Information is a formal charging instrument in Texas. "An 'information' is a written statement filed and presented in behalf of the State by the district or county attorney, charging the defendant with an offense which may by law be so prosecuted." TEX.CODE CRIM.PROC.ANN. art. 21.20 (West 2009). Thus, Grimm did not "initiate" the charge, the State's prosecutor did. *Lermon v. Minyard Food Stores, Inc.*, No. 05-13-00034-CV, 2014 WL 6466840 *5 (Tex.App.--Dallas, Nov. 19, 2014, pet. denied)(mem. op.)(voluntary statement made by defendant was not a "formal charge" nor did it actually operate

13

to initiate the criminal prosecution when detective presented his own probable cause affidavit to a magistrate).[7]

Gonzalez was therefore left with proving that Grimm *procured* the charge by showing she provided false information that led to the filing of the information. The false information Gonzalez focuses upon is contested statements such as "do you know what I could do with this" which imply some improper use of the Social Security number. But in this case, Officer Calanche executed a Complaint and Complaint Affidavit that made three specific allegations, one of which stated Grimm was threatened with bodily injury. Grimm testified she never made such a claim, and there is no evidence in the record that she did. Stated otherwise, Officer Calanche included allegations in the complaint paperwork that Grimm never made, and the claim that she was threatened with bodily injury was itself false, but it did not come from Grimm. Whether the district attorney filed the information based on Calanche's false information, or that alleged to be from Grimm, is unknowable without testimony from the district attorney, its file, or some other indication as to how the actual decision to proceed with the charge was made. Gonzalez had neither the district attorney's testimony, nor the district attorney's file. On the facts in this case, the lack of any such testimony is fatal to his claim.

---

[7] Gonzalez cites a number of cases in support his contention that Grimm initiated the charge. We have previously discussed *Lieck* and *King*, and neither supports the claim that simply signing a witness statement is the same as initiating a formal charge. The four other cases cited by Gonzalez are all inapposite. *All American Telephone, Inc. v. USLD Communications, Inc.*, 291 S.W.3d 518, 534 (Tex.App.--Fort Worth 2009, pet. denied)("Appellants do not assert that appellees initiated Nowik's and Thibodeaux's prosecutions by filing a formal complaint."); *Tranum v. Broadway*, 283 S.W.3d 403, 416 (Tex.App.--Waco 2008, pet. denied)(court affirmed on evidence that defendant procured the prosecution by presenting false evidence, not by initiating the charge); *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 422 (Tex.App.--Dallas 2007, pet. denied)(holding defendant did not initiate or procure prosecution, rather the State did); *Thrift v. Hubbard*, 974 S.W.2d 70, 77-78 (Tex.App.--San Antonio 1998, pet. denied)(court did not need to reach question of whether sworn complaint was equivalent of formal charging document because there was ample proof of false information given to authorities which led to arrest).

The plaintiffs in *King* argued that a jury could infer causation from the falsity of the information itself. 126 S.W.3d at 79. And the court suggests such an inference might be drawn when the only information the official relied on was the false information. *Id.* But just like in *King*, the prosecutor here had much more information before him than just the defendant's statement. For instance, Officer Calanche's Complaint affidavit references events over a two month period, supported by statements from multiple witnesses, which were forwarded to the district attorney's office. Those statements included claims by another principal, a PTA vice president, and a teacher who described confrontations with Gonzalez.[8] The charging decision made by the district attorney's office involved more than simply looking at Grimm's version of the March 8, 2006, phone call. Without some evidence that Grimm's version of the March 8 phone call formed the basis of the district attorney's decision, Gonzalez simply lacks any evidence of causation.[9]

Grimm urges that we could also affirm the judgment below based upon her having probable cause (as a matter of law) to believe that Gonzalez committed Fraudulent Use or Possession of Identifying Information (the charge the district attorney initially declined). She also believes the record shows that Gonzalez is guilty of that charge as a matter of law. She contends that she was privileged as a matter of law to report a crime because she did so an

---

[8] At time of Grimm's first report about the March 8 phone call, the EPISD police already were already investigating Gonzalez, based on staff concerns that he was aggressive, rude, and abrasive, which some perceived as threatening conduct. Some of the witnesses stated that Gonzalez never threatened them. None claimed that Gonzalez ever physically threatened them, and of most of his statements were related to threats of filing lawsuits, getting people fired, or filing grievances with the EPISD.

[9] The Austin Court of Appeals in *Bennett v. Grant*, No. 03-11-00669-CV, 2015 WL 1324857 (Tex.App.--Austin March 20, 2015, no pet. hist.) recently held that a plaintiff could also overcome a prosecutor's role in the decision making process by showing that "a defendant's conduct was the determining factor in the prosecutor's decision to prosecute." *Id.* at *6. Without endorsing this holding, we note that the facts in *Grant* are unique and far different than those here. In *Grant,* the defendant shopped the prosecution to four different counties, and when no one would pursue the matter, he was apparently instrumental in having a special prosecutor appointed who did pursue the case. *Id.* at *2, 3. In any event, the special prosecutor testified that he relied on the false information provided by the defendant, which provided some evidence for the false information exception described in *Lieck*. *Id.* at *5, 6.

employee of a school district in the course and scope of her employment. But all of these contentions in one way or another turn on whether Gonzalez in fact threatened Grimm in the March 8 phone call. If he never threatened her, there was no crime to report, no probable cause to make a complaint, and no crime of which to be guilty. The threat arose from the words "do you know what I could do with" in the context of the other things said in the call. Because the witnesses disputed what was said in that phone call, as well as the other surrounding contextual facts, these issues would have all been appropriate for the jury to decide.

In summary, we overrule Issue One which contends there was no need for proof of a false statement. Because there was no evidence that Grimm initiated the prosecution, and the ultimate decision was left to the district attorney's office, the only means to prove Grimm procured the prosecution was to prove she knowingly provided false information. But even assuming she did provide false information, there was no evidence that the claimed false information procured the prosecution, and we accordingly overrule Appellant's third issue (claiming there is some evidence of each element of the claim). The second issue regarding evidence of Grimm's malice is moot. We affirm the judgment below.

July 8, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Perez, Judge
Perez, Judge, sitting by assignment