**CONDITIONALLY GRANTED and Opinion Filed November 14, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-24-00450-CV**
_____

**IN RE DALLAS COUNTY CRIMINAL DISTRICT
ATTORNEY JOHN CREUZOT AND DALLAS COUNTY
MEDICAL EXAMINER'S OFFICE, Relators**

**Original Proceeding from the County Court at Law No. 4
Dallas County, Texas
Trial Court Cause No. CC-23-07231-D**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Smith, and Garcia
Opinion by Justice Smith

Relators Dallas County Criminal District Attorney John Creuzot (the DA's Office) and the Dallas County Medical Examiner's Office (the ME's Office) filed a petition for writ of mandamus and an emergency motion for temporary relief challenging nonparty discovery ordered by the respondent, the Honorable Dianne Jones, in the underlying civil suit. Because we conclude that respondent's discovery orders on relators' first motions for protective orders were a clear abuse of discretion, we conditionally grant the writ.

## Procedural Background

Real party in interest Amer Yasin filed suit in November 2023 alleging survival claims against John Brook Clark for the sexual assault of his daughter, Nadia Yasin, leading up to her murder on September 12, 2021. The DA's Office is currently prosecuting Clark for the murder of Nadia; the ME's Office performed her autopsy. Neither the DA's Office nor the ME's Office are parties to the underlying civil suit.

In January 2024, Amer served relators with notices of depositions on written questions. The notices were attached to pages that were labeled as subpoenas duces tecum, and the returns of service were subpoena returns. The pages labeled as subpoena duces tecum required relators to appear before a notary public "no less than seven days following the service of this subpoena which will be issued no less than twenty-five days following the service of the Notice of Subpoena Duces Tecum." The notice served on the ME's Office requested any and all autopsy records related to Nadia. The notice served on the DA's Office requested a list of twenty-two categories of items, including any confessions or statements made by Clark, arrest warrants, offense reports, names of law-enforcement officers and employees of the DA's Office who had participated in the case, names of any person interviewed, photographs, videos, physical evidence, and reports of scientific tests and medical or psychological examinations, as well as the opportunity to inspect the defendant's and the victim's cell phones.

Relators each filed a motion for protective order. The DA's Office argued that the subpoena was defective because it was not dated or signed and required the DA's Office to provide documents in a shorter time frame than allowed by the rules; the requested records pertained to a pending criminal prosecution and the release of such records would interfere with the detection, investigation, or prosecution of Clark; and the subpoenas were outside the permissible scope of discovery because they improperly sought attorney work product, privileged attorney–client communications, and statutorily confidential information. The DA's Office urged that even if some items could be released, the trial court must first conduct an *in camera* inspection to determine that the discovery sought was relevant and that there was a specific need for it. The ME's Office argued that the subpoena served on its office was defective because it was not dated or signed, there was no witness fee attached to the subpoena, a return of service was not filed with the court, and the subpoena required the production of documents in a shorter time frame than allowed by the rules. The ME's Office also adopted the DA's Office's argument that the requested records pertained to a pending criminal prosecution and further argued that Clark should not have unfettered access to documents that he would not be physically entitled to under the criminal discovery rules.

The parties agreed to set the motions for protective orders for a hearing on March 25, 2024, at 3:00 p.m. and filed an agreed notice with the trial court on February 6, 2024.

–3–

On February 26, 2024, Amer's counsel issued new subpoenas for deposition and duces tecum, which were served on relators on February 28. This time the subpoenas were signed, dated, accompanied by witness fees, and commanded that relators produce the documents by March 26, 2024, the day after the scheduled hearing.

On March 18, 2024, Amer filed a response to each of the motions for protective order. In his responses, he acknowledged that the first documents served on relators were merely notices, not subpoenas, which he asserted should have been clear by the included language in the documents that a subpoena would be served twenty-five days after the notice. Amer argued that relators failed to establish a privilege existed and that any privilege had been waived due to disclosure of the documents in the criminal case. In response to the ME's Office's motion, Amer additionally asserted that, because the ME's Office was not a law-enforcement agency, it could not claim that the documents were privileged because they were the subject of a pending criminal prosecution.

On the morning of March 25, 2024, the same day as the hearing, relators each filed a Second Motion for Protective Order challenging the new subpoenas served upon them on February 28. The second motion filed by the DA's Office contained similar arguments to its first motion for protective order, but it also included more detailed arguments regarding how the documents pertained to a pending criminal prosecution, were not public information, would be excluded from public disclosure

under the Texas Public Information Act, *see* TEX. GOV'T CODE § 552.108, and were subject to strict disclosure limitations under the Michael Morton Act, *see* TEX. CODE CRIM. PROC. art. 39.14. To support the DA's Office's assertion of its privilege in withholding the requested documents, the DA's Office's second motion included an affidavit from the prosecutor assigned as lead counsel in Clark's criminal case in which she testified that producing documents in the DA's Office's file would interfere with the detection, investigation, and prosecution of Clark. She explained that allowing Clark to receive copies of documents in the civil case to which he would not be entitled in the criminal case could lead to tampering with witnesses (either by causing them to change their testimony or by causing them to become unwilling to testify at all) or could jeopardize the safety of officers involved in the investigation. She also testified that allowing the parties in the civil case access to examine or test physical evidence of any kind could compromise the integrity and admissibility of those items and that allowing any documents to become public before the criminal trial could impact the selection of a fair and impartial jury. The ME's Office argued that the documents requested to be produced by its office were part of the files of the DA's Office and again adopted the DA's Office's arguments that release of such information would interfere with Clark's prosecution and even his right to a fair trial. Relators also argued that the second subpoenas served upon them were premature because they required production on March 26, the day after the date on which the first motions were set to be heard (March 25) and presumed

–5–

that relators would not seek protection from the second subpoenas or that the trial court would not need additional time to consider relators' arguments and evidence.

Amer filed objections to relators' second motions for protective orders the same day. He argued that the local rules required any briefs, responses, or replies to a motion to be filed no later than three working days before the hearing and therefore the motions should be struck as untimely. At the hearing, respondent indicated she would allow discovery in a limited fashion, and the discussion turned to whether the discovery would be provided under a protective order. The parties briefly discussed the second motions for protective orders and whether the hearing on the first motions was even necessary. Amer argued that the trial court should still rule but not consider relators' second motions, and relators argued that the second motions had not been set for a hearing and those were the motions addressing the actual subpoenas served upon them. The parties held a discussion off the record and, when they returned, respondent stated she was going to grant the protective orders.

Over relators' objections to the proposed orders, respondent ordered the DA's Office to make the unredacted portions of its prosecution file, which had previously been disclosed under the Michael Morton Act to Clark's counsel in the criminal case, available to Amer's counsel within fourteen days. The order did not require reproduction of the documents, only supervised inspection. Respondent ordered the ME's Office to produce the complete autopsy file of Nadia (excluding any external or additional expert reports used by the DA's Office in the criminal prosecution),

photos and video from the autopsy, and an affidavit authenticating such records. Both orders provided that "dissemination of the records or their contents is barred to third parties outside of the litigation" and included a copy of the protective order, as well as a confidentiality agreement.

This original proceeding followed. In six issues, relators assert they are entitled to mandamus relief because (1) the motions that were the subject of the March 25 hearing and the subsequent orders were not directed at the February 28 subpoenas but instead were directed at the earlier notices of deposition and, thus, respondent has not heard or ruled on the relevant motions; (2) respondent did not conduct an *in camera* review of the documents before ordering production or inspection; (3) allowing the discovery interferes with the prosecution of Clark; (4) allowing the discovery circumvents the limits of the Michael Morton Act; (5) the requested discovery constitutes privileged and confidential information; and (6) relators have no adequate remedy on appeal.

On April 16, 2024, we granted relators' emergency motion for temporary relief staying the discovery orders at issue and requested Amer, Clark, and respondent to file a response, if any, on or before April 26, 2024. Amer filed a response to which relators replied; no other responses were received by this Court.

**Mandamus Relief**

To be entitled to mandamus relief, a relator must show that the trial court clearly abused its discretion and that relator has no adequate remedy by appeal. *In*

–7–

*re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner or without reference to guiding rules and principles. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (per curiam). As to discovery orders, mandamus is proper when the court of appeals cannot cure the discovery error on appeal such as when an order allows discovery over a timely asserted and proven privilege. *Id.*; *see also In re Bexar Cnty. Crim. Dist. Att'y's Off.*, 224 S.W.3d 182, 185–90 (Tex. 2007) (orig. proceeding) (concluding work-product privilege protected DA's staff from being compelled to provide deposition or trial testimony pertaining to their file and decision to prosecute and conditionally granting mandamus relief); *cf. In re Westwood Affiliates, L.L.C.*, 263 S.W.3d 176, 178–79 (Tex. App.—Houston [1st Dist.] 2007, orig. proceeding) (explaining that the supreme court, in *Hobson v. Moore*, 734 S.W.2d 340, 340–41 (Tex. 1987) (orig. proceeding), recognized an independent law-enforcement privilege in civil litigation and concluding that trial court did not abuse its discretion in denying motion to compel production from Houston Police Department regarding an ongoing investigation). A nonparty has no right to appeal a court order that compels discovery and, thus, has no adequate appellate remedy. *In re Berry*, 578 S.W.3d 173, 182 (Tex. App.—Corpus Christi–Edinburg 2019, orig. proceeding).

## Nonparty Discovery

A party may compel discovery from a nonparty only by obtaining a court order or by serving a subpoena on the nonparty. TEX. R. CIV. P. 205.1. The subpoena may compel an oral deposition, a deposition on written questions, a request for production of documents or tangible things served with a notice of deposition on oral examination or written questions, or a request for production of documents and tangible things without deposition. *Id.* The subpoena must be issued in the name of "The State of Texas"; state the style of the case, the cause number, the court in which the suit is pending, the issued date, and the time, place, and nature of the action required; identify the person to whom the subpoena is directed and the party and party's counsel who issued the subpoena; include a statement regarding contempt for not complying; and be signed by the person issuing it. TEX. R. CIV. P. 176.1. Service of the subpoena must be accompanied with a witness fee. TEX. R. CIV. P. 176.5.

The nonparty may move for a protective order before the time specified in the subpoena for compliance. TEX. R. CIV. P. 176.6(e); *see also* TEX. R. CIV. P. 192.6. Pursuant to rule 176.6, a motion for protective order stays a request for testimony and production of records until such time as the trial court rules on the motion. TEX. R. CIV. P. 176.6(e). "The party requesting the subpoena may seek such an order at any time after the motion for protection is filed." *Id.*

Relators argue that their second motions for protective orders stayed the requests for discovery in the February 28 subpoenas. Amer responds that the requested discovery did not change between the notice and the subpoenas and that he initially provided the notice to give relators more time to comply. Rule 200.1 provides that "[a] notice of intent to take the deposition [on written questions] must be served on the witness and all parties at least 20 days before the deposition is taken." TEX. R. CIV. P. 200.1(a). However, to compel production of documents or tangible things from a nonparty, a subpoena must be served on the nonparty *with a notice* of deposition on written questions. TEX. R. CIV. P. 205.1 (emphasis added); *see also* TEX. R. CIV. P. 199.2(b)(5) ("If the witness is a nonparty, the request must comply with Rule 205 and the designation of materials required to be identified in the subpoena must be attached to, or included in, the notice."). The notice may be served before or at the same time the subpoena is served, but if it is served before, it must be served at least ten days before the subpoena is served. TEX. R. CIV. P. 205.2.

While it was not improper for Amer to serve the notices on relators before the actual subpoenas, and the notices included the same items to be produced or inspected as the subpoenas, relators' first motions for protective orders and the hearing set on those motions were premature. Proper notices and subpoenas, which are required for requests for production on a nonparty, were not served on relators until February 28, after the March 25 hearing had already been set. Had Amer never served the required subpoenas, relators would not have been obligated to comply

with the notices.  *See In re Guardianship of Benavides*, No. 04-13-00196-CV, 2014 WL 1494606, at *2–3 (Tex. App.—San Antonio Apr. 16, 2014, no pet.) (mem. op.) (concluding nonparty was not required to produce documents when he was not served with a subpoena as required under the rules and, thus, the trial court abused its discretion in ordering sanctions).  At the hearing, the trial court agreed that the first set of documents included a notice but not a valid subpoena.

Relators' second motions for protective orders were filed on March 25, the same day as the hearing and a day before the deadline to comply with the February 28 subpoenas.  A hearing was not set on the second motions, and Amer did not file a motion to compel.

Amer argues that the subpoenas were served before the hearing and, thus, respondent had the authority to compel discovery on the basis of those subpoenas.  Amer also argues that the issues presented in relators' second motions were identical to the issues presented in their first motions, which relators did not withdraw or amend, and were presented at the hearing, which relators did not reset.  He maintains that relators failed to prove any asserted privilege.  Amer further argues that the second motions were untimely, and he objected to the second motions being considered at the hearing.

Respondent, however, did not rule on Amer's timeliness objection to relators' second motions for protective orders, nor did respondent indicate at the hearing that she considered the second motions.  The orders also do not indicate a ruling on the

second motions, which are separately and distinctly titled, "Second Motion for Protective Order," as the orders begin, "On this day came to be considered THE DALLAS MEDICAL EXAMINER'S MOTION FOR PROTECTIVE ORDER (the 'Motion')" and "On this day came to be considered THE DALLAS DISTRICT ATTORNEY'S OFFICE MOTION FOR PROTECTIVE ORDER (the 'Motion')."

Additionally, although Amer contends that the issues in the second motions were identical to the issues in the first motions, he also asserts that relators filed the second motions to correct deficiencies in their previously filed motions and, thus, implies that there is some difference between the two. And indeed, our review of the two sets of motions shows that relators' arguments asserting certain privileges were more in depth in the second motions and included an affidavit by the prosecuting attorney supporting relators' arguments, which was not included with the first motions. Furthermore, there was no discussion at the hearing regarding relators' asserted privileges, such as the law enforcement privilege, which requires the trial court to conduct an *in camera* inspection of the documents sought and make certain findings before ordering production by the nonparty law-enforcement agency, *see* TEX. CIV. PRAC. & REM. CODE § 30.006(c)–(d), nor was there any discussion as to whether Amer had established good cause for disclosure under the Michael Morton Act, *see* TEX. CODE CRIM. PROC. art. 39.14(e)(1). Instead, the discussion on the record centered on the effect of compelling the production of documents that would wind up in Clark's hands even though he was not permitted a

–12–

copy of such documents in his criminal trial. *See* TEX. CODE CRIM. PROC. art. 39.14(d), (f).

Because we cannot determine whether respondent considered the arguments and evidence presented in relators' second motions or refused their consideration, it is premature for this Court to entertain the merits of relators' asserted privileges. *See, e.g.*, *In re Gore*, 251 S.W.3d 696, 701 (Tex. App.—San Antonio 2007, orig. proceeding) (explaining that a fair reading of the record revealed that the trial court did not address the merits of the motion; "[a]ccordingly, the issue is not ripe and we decline to address it," but "[w]e have confidence the trial court will consider and rule on the merits of the motion . . . within a reasonable period of time"); *In re R.R.*, 26 S.W.3d 569, 574 (Tex. App.—Dallas 2000, orig. proceeding) ("The trial court's order does not give any ground for the ruling except the court's uncertainty of the law and the pendency of the criminal proceeding. The trial court has not ruled on any other ground asserted in the motions for protective order; therefore, these issues are not ripe for review.").

As to the first motions on which the hearing was set, we agree with relators that respondent was without authority to grant discovery on notices of subpoenas, i.e., defective subpoenas. Although the actual subpoenas were served before the hearing, the hearing was not set to address them. Instead, it was set to address relators' motions for protective orders in response to the notices of subpoenas. Therefore, we conclude that respondent clearly abused her discretion in issuing the

–13–

April 2, 2024 discovery orders and that relators, as nonparties to the underlying civil suit, are without an adequate remedy on appeal.

## Conclusion

Respondent abused her discretion by ordering discovery from nonparties without hearing their motions for protective orders regarding the subpoenas served on February 28, 2024.  We, therefore, conditionally grant the writ, direct respondent to vacate her April 2, 2024 discovery orders, and lift our April 16, 2024 stay order.  A writ will issue only if the trial court fails to comply.

240450f.p05

/Craig Smith//
CRAIG SMITH
JUSTICE